81   209,
105  863

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## JUSTICE v. THE COMMONWEALTH.

### DECEMBER 10th, 1885.

1. CONSTRUCTION OF STATUTES—*Repeal by implication.*—Repeals by implication are not favored, but when two acts on same subject are irreconcilable, the latter act prevails.
2. IDEM—*Idem—Lotteries—Sale of tickets.*—By section 4, of act of February, 1816, the Dismal Swamp Canal Company was authorized to raise, by lotteries, $50.000.   By sections 11 and 12, of Acts 1877–78, p. 309, the buying, selling, &c., of tickets in any lottery is prohibited under penalty.   By necessary implication the latter act repeals the former.
3. CONSTITUTION—*Lottery privilege—Repeal.*—The privilege to conduct a lottery is not a contract, but a matter of police; and the repeal of such privilege impairs the obligation of no contract, and is constitutional.   And so of privilege to sell liquor, &c.
4. CRIMINAL JURISDICTION AND PROCEEDINGS—*Pleas of estoppel.*—The doctrine of estoppel is not applicable to the Commonwealth in a criminal prosecution.   The maxim, "No one shall be twice put in jeopardy for the same offence," rests upon technical notions of jeopardy, and not upon the principle of *res judicata*.   But that doctrine has been held applicable to the accused.   *Commonwealth* v. *Evans*, 101 Mass. 25.
5. IDEM—*Former jeopardy—Identity of parties.*—To avail of such defence accused must plead *autrefois acquit* or *convict*, and must aver that he is the identical party who was prosecuted once before for the identical offence.

Error to judgment of hustings court of Petersburg, rendered 27th February, 1884, upon an indictment against the plaintiff in error, James E. Justice, for selling a ticket of the lottery of the Dismal Swamp Canal Company.

The defendant admitted the selling, but contended that it was lawful, and that the fourth section of the act passed 14th February, 1816, authorized the selling of the tickets of the lottery of said company.    He also offered two pleas in estoppel to the prosecution.    These pleas were founded on the facts that others had been indicted in the hustings courts of Richmond and Norfolk respectively, for selling the tickets of said company, and had justified under the authority conferred on said company; that the Commonwealth had contended that that authority had been repealed by sections 11 and 12, of the acts of 1877–78, p. 309; but that each of the said courts had decided that the said lottery privileges was a contract and irrepealable.    And the defendant pleaded that these decisions operated as an estoppel to the prosecution.

Opinion states fully the facts and points raised.

*Christian & Christian* and *John S. Wise,* for the plaintiff in error.

*F. S. Blair,* Attorney-General, and *Wattles & Mushback,* for the Commonwealth.

LEWIS, P., delivered the opinion of the court.

The plaintiff in error was indicted and convicted in the hustings court of the city of Petersburg, for unlawfully selling a certain lottery ticket of the Dismal Swamp Canal Company.

The prosecution was founded on the statute prohibiting "the buying, selling or transferring of tickets or chances in any lottery," and declaring that any person who shall buy, sell or transfer any such chance or ticket shall be deemed guilty of a misdemeanor, and confined in jail not more than one year, and fined not exceeding five hundred dollars.    Acts 1877–78, p. 309, sections 11, 12.

It appears that the Dismal Swamp Canal Company was chartered by an act of the general assembly, passed December 1st, 1787, and that by the fourth section of an act passed on the 14th of February, 1816, the company was authorized to raise, by one or more lotteries, the sum of $50,000, for the purpose of constructing or enlarging its canal, with a view to the improvement of the internal navigation between the waters of Virginia and North Carolina. Acts 1815–16, p. 71, *et seq.*

It seems, however, that nothing was ever done under this act until the 6th of November, 1882, when the company, by a resolution of its stockholders, appointed Burruss, Son & Co., of Norfolk, its agents to organize and conduct a lottery, and to appoint agents for that purpose. Under authority thus conferred, the plaintiff in error was appointed an agent to sell lottery tickets for the company, and, as such agent, sold the ticket mentioned in the indictment.

The statute under which the prosecution was conducted is comprehensive and unqualified in its terms, and by necessary implication repeals the fourth section of the act of February 14, 1816, to which we have referred. It declares that "the buying, selling or transferring of tickets or chances in *any* lottery shall be, and the same is hereby, prohibited."

The established doctrine undoubtedly is, that repeals by implication are not favored. But when, as is the case here, two acts on the same subject are irreconcilable, the latter act prevails, and the first is repealed to the extent of the repugnancy. *United States* v. *Tynen,* 11 Wall. 88 ; *Fox's Adm'r* v. *Commonwealth,* 16 Gratt. 1 ; *Haynes* v. *Commonwealth,* 31 Id. 96 ; *Hogan* v. *Guigon,* 29 Id. 705.

This being so, the first question to be considered is, whether the repeal of the fourth section of the act of 1816 impairs the obligation of a contract between the State on the one hand and the company on the other. The plaintiff in error contends

that it does.   He contends that the privilege to conduct a lottery, granted by the act of 1816, is, in its nature, a contract, not revocable at the will of the legislature, and that, consequently, the repealing statute is repugnant to the tenth section of the first article of the constitution of the United States and void.

The question thus raised has been the subject of adjudication in numerous cases, both in the State and Federal courts, and with substantial unanimity the decisions have been adverse to the view for which the plaintiff in error contends.   It is difficult to see how it can be otherwise decided; for clearly the privilege to conduct a lottery is not a subject of contract, but falls within the police power of the State, and, therefore, not within the scope of federal authority, and is subject to the control of the legislature.   The precise limits of that power it may not be easy to define; but, undoubtedly, it extends to the suppression of nuisances, the preservation of the health, good order and morals of the public, and cannot be irrevocably granted away for any purpose, however meritorious, or for any consideration, however valuable.   *License Cases*, 5 How. 504; *United States* v. *Dewitt*, 9 Wall. 41; *Bartemeyer* v. *Iowa*, 18 Id. 129; *Beer Co.* v. *Massachusetts*, 97 U. S. 25; *Butcher's Union Co.* v. *Crescent City Co.* 111 2d, 746; Cooley's Const. Lim. 572, 594.

It is on this ground that statutes, repealing prior statutes granting the privilege to sell intoxicating liquors, have been held to be valid.   A case in point is *Metropolitan Board of Excise* v. *Barrie*, 34 N. Y. 657.   " These licenses to sell liquors," said the court in that case, " are not contracts between the State and the person licensed, giving the latter vested rights, protected on general principles, and by the constitution of the United States against subsequent legislation; nor are they property in any legal or constitutional sense.   *   *   *   If the act had declared that licenses under it should be irrevoca-

ble, the legislatures of subsequent years would not have been bound by the declaration. The necessary powers of the legislature over all subjects of internal police, being a part of the general grant of legislative power given by the constitution, cannot be sold, given away, or relinquished. Irrevocable grants of property and franchises may be made, if they do not impair the supreme authority to make laws for the right government of the State; but no one legislature can curtail the power of its successors to make such laws as they may deem proper in matters of police."

The principle thus emphatically announced applies with equal, if not greater, force to a case like the present. From an early day lotteries have been regarded as pernicious in their effects and demoralizing to the community, and stringent statutes have been passed, at various times, prohibiting them. In 1825 an act was passed "to prevent the sale of foreign lottery tickets within this Commonwealth," and prescribing a penalty for the sale of tickets in any lottery not authorized by the laws of this State. Acts 1825, page 21. This was followed by an act passed February 25th, 1834, entitled "An act to suppress lotteries in this Commonwealth," but providing that the act should not be construed to interfere with contracts then made for the drawing of any lottery which were not to extend beyond January 1st, 1837; nor with contracts which might thereafter be made under any law then in force authorizing the same, but not to extend beyond the first day of January, 1840. '

By the constitution of 1851 it was provided, that "no lottery shall hereafter be authorized by law, and the buying, selling, or transferring of tickets of chance in any lottery not now authorized by a law of this State, shall be prohibited." Art. IV., sec. 33. And by an act passed May 22nd, 1852, which is substantially the act now in force, the sale of lottery tickets

was absolutely prohibited. And so it is ordained in the present constitution that "no lottery shall hereafter be authorized by law, and the buying, selling, or transferring of tickets or chances in any lottery shall be prohibited." Art. V., sec. 18.

Similar provisions are to be found in the constitutions and laws of other States, and these provisions are in harmony with the prevailing sentiment of the country on this subject. In *Phalen* v. *Virginia*, 8 How. 163, a case which went from the general court of this State to the Supreme Court of the United States, it was declared by the latter court that "experience has shown that the common forms of gambling are comparatively innocuous when placed in contrast with the wide-spread pestilence of lotteries. The former are confined to a few persons and places, but the latter infects the whole community; it enters every dwelling; it reaches every class; it preys upon the hard earnings of the poor; it plunders the ignorant and simple."

The precise question we are now considering came before the supreme court in *Stone* v. *Mississippi*, 101 U. S. 814. In that case by an act of the legislature of Mississippi, a company was chartered with authority to conduct a lottery, on condition that the company should pay to the treasurer of the State, before commencing business, the sum of $5,000, and execute a bond with security for the annual payment thereafter to the State of $1,000, etc. Subsequently a new constitution for the State was adopted, and in accordance with its requirements the legislature passed an act prohibiting all kinds of lotteries within the State. The latter act and the constitutional provision on which it was founded were assailed as unconstitutional, on the ground that they impaired contract rights and franchises acquired under the previous act of incorporation. But they were held to be valid.

"The contracts," said the court, "which the constitution protects are those that relate to property rights, not governmental. It is not always easy to tell on which side of the line which separates governmental from property rights a particular case is to be put; but in respect to lotteries there can be no difficulty. * * They are a species of gambling, and wrong in their influences. They disturb the checks and balances of a well-ordered community. * * Certainly the right to suppress them is governmental, to be exercised at all times by those in power at their discretion. Any one, therefore, who accepts a lottery charter does so with the implied understanding that the people in their sovereign capacity, and through their properly constituted agencies, may resume it at any time when the public good shall require, whether it be paid for or not."

We have thus quoted at some length from the opinion of the supreme court, because it is conclusive of the question, and shows beyond a doubt that in the present case the Commonwealth's demurrer to the defendant's third plea was properly sustained. See also *Bass* v. *Mayor of Nashville*, Meigs (Tenn.), 421; S. C. 33 Am. Dec. 154; *State* v. *Morris*, 77 N. C. 512; *State* v. *Woodward*, 89 Ind. 110; *Moore* v. *State*, 48 Miss. 147.

The next question relates to the two pleas in estoppel which were tendered by the defendant. The first averred that Burruss, Son & Co., who, as we have seen, were appointed agents of the Dismal Swamp Canal Company to organize and conduct a lottery, were afterwards, and before the finding of the indictment against the defendant in the present case, indicted in the corporation court of Norfolk for selling a lottery ticket of the company, and pleaded in bar of the prosecution the authority conferred on the company to conduct a lottery by the fourth section of the act of 1816; to which plea the Com-

monwealth demurred, but the demurrer was overruled, on the ground that the privilege conferred by the act of 1816 constituted a contract which was irrevocable by the State; and, accordingly, a final judgment was entered for the defendants. And the second plea averred that subsequently, one J. P. Horback was appointed an agent of the company, and was indicted in the hustings court of this city for selling a lottery ticket in the same lottery; that on the trial he pleaded in estoppel the judgment of the corporation court of Norfolk in favor of Burruss, Son & Co., by whom he had been appointed; which plea the hustings court sustained.

Upon these facts thus set out in his two pleas, the defendant insisted that the Commonwealth was *estopped* from maintaining a prosecution against him for selling a ticket in the same lottery under the same authority and claim of right. But on motion of the attorney for the Commonwealth the pleas were rejected, and we think correctly.

The rule in civil cases is, that the estoppel of a judgment only binds parties and juries, and the point of controversy must be the same in both cases, and must be determined on its merits. *Hughes* v. *United States*, 4 Wall. 232; *Chrisman* v. *Harman*, 29 Gratt. 494. And if we apply this rule to the present case, it is obvious that the pleas were properly rejected. For here not only were the offences different, and the parties not the same, but there was no privity between the defendants mentioned in the pleas and the defendant in the present case. Burruss, Son & Co. were not indicted as agents of the Dismal Swamp Canal Company, but for acts done by them personally, and for which they were personally liable. And so of the defendant Horback. For, though appointed by Burruss, Son & Co., he was the agent, not of that firm, but of the Canal Company, and so no privity existed between him and the firm by which he was appointed, and the same reasoning

applies to the defendant in the present case.   So that it thus appears that while one of the points in the controversy was common to all the cases—namely: the right of the company to conduct a lottery—yet the parties and the specific offences charged in each case are different, and there is no privity between any of the defendants.

But the doctrine of estoppel, strictly speaking, is not applicable to the Commonwealth in a criminal prosecution.   The nearest approach to it is the doctrine, founded on the maxim of the common law, that no one shall be twice put in jeopardy for the same offence.   " This doctrine," says Bigelow, "has a close relation to the subject of estoppel by former judgment, and may be considered as the criminal law counterpart of the same doctrine.   But the doctrine rests upon technical notions of jeopardy, and not upon the principle of *res judicata*," etc. Bigelow on Estoppel (3d ed.), 47.

The cases referred to by counsel for the plaintiff in error are civil cases, or are cases wherein the accused, and not the prosecution, was held to be estopped.   Thus, in *Regina* v. *Blakemore*, 9 Eng. L. & Eq. 541, the defendant was indicted for the non-repair of a highway which it was alleged he was liable to repair *ratione tenuræ*.   At the trial evidence was permitted to be introduced showing the conviction of one Smith, a former owner of the lands in question, on a presentment alleging his liability to repair the same highway, and also that the defendant purchased these lands with notice of the liability to repair, and was then the owner and occupier of the same.   It was held that the evidence was admissible, as tending to show immemorial usage, and liability by reason of tenure; and it was assumed by some of the judges that the defendant, being a privy in the estate with Smith, the former conviction was an estoppel, though the point was not necessary to the decision.

So, in *Regina* v. *Inhabitants of Haughton*, 1 E. & B. 501 (72 E. C. L. 501), the defendants being indicted for the non-repair of a certain highway, the question was, whether they were liable to repair. And it was held that the record of a former judgment on a presentment against the same defendants for the non-repair of the same highway was conclusive evidence that they were.

In *Commonwealth* v. *Evans*, 101 Mass. 25, it was held on the trial of an indictment for manslaughter that the record of a former conviction of the accused for the identical assault which caused the death of the deceased, was conclusive evidence that the assault was unjustifiable.

In these and other cases, to which reference has been made, the defendants were held to be concluded, on the ground o estoppel, by previous judgments against them. But we have been unable to find any intimation in the text-books or adjudged cases to the effect that the same rule applies in a criminal case to the sovereign. The doctrine of former jeopardy, as we have said, is the nearest approach to it; and to avail himself of that defence, the defendant must plead *autrefois acquit* or *convict*. which is said to be an essential prerequisite to the introduction of the record of the prior procedure. Whart. Crim. Ev., sec, 592; 1 Bish. Crim. Proc., sec. 579. And the plea must aver not only that the second prosecution is for the same offence, but that the defendant is the identical person who was proceeded against in the first prosecution. 1 Bish. Crim. Proc., sec. 580.

The question of estoppel was raised by the defendant, but without success, in *Boyd* v. *Alabama*, 94 U. S. 645. That, too, was a prosecution for unlawfully setting up and carrying on a lottery, and the defendant was convicted and sentenced to pay a fine. It appears that the defendant was acting under a statute of the State of Alabama authorizing the lottery in question, but which statute was afterwards repealed. After its repeal the

defendant was indicted for carrying on a lottery without authority of law, and was acquitted on the ground that the first statute constituted a contract, and that the repealing statute was for that reason void.   And the second indictment being for a similar offence, he relied in his defence on the former acquittal, and insisted that the State was estopped thereby.   But the defence was not sustained; and the court being of opinion that the first statute was unconstitutional, judgment was pronounced against the defendant, which, on writ of error to the Supreme Court of the United States, was affirmed.

The doctrine for which the plaintiff in error contends, if established, would lead to this result, namely: that no matter how serious the offence charged may be, yet the Commonwealth is estopped from interfering to prevent its repetition by the erroneous judgment of an inferior court, declaring a solemn statute of the State unconstitutional and void, and which judgment is henceforth to be binding and conclusive in all similar cases, not only upon the other inferior courts of the State, but upon this court as well.   We are of opinion that such a doctrine is clearly not maintainable, and was properly repudiated by the hustings court.

JUDGMENT AFFIRMED.