# Wytheville

OREN WELDON ADKINS V. COMMONWEALTH.

June 10, 1940.

Record No. 2261.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

W. B. Snidow, for the plaintiff in error.

Abram P. Staples, Attorney-General, and Walter E. Rogers, Special Assistant, for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

Oren Weldon Adkins was arraigned, tried and convicted upon an indictment charging him with aiding and abetting Pearl Copeland Miller in the commission of the crime of bigamy. He was sentenced in conformity with the verdict of the jury to serve three years in the penitentiary.

The facts are undisputed. The Commonwealth proved that on the 3rd day of September, 1938, Pearl Copeland Miller was a married woman having a living husband in Monroe county, West Virginia, from whom she had not been divorced, all of which the defendant, Adkins, well knew; that on the said 3rd day of September, 1938, she left her husband's home in Monroe county, West Virginia, and came to Pearisburg, Giles county, Virginia, with the defendant, and there she and the defendant procured a marriage license from the clerk of the Circuit Court of Giles county, Virginia, and that she and Adkins thereupon sought a minister of the Gospel, and were by him married in Giles county, under and pursuant to the license so obtained; that the defendant was a single man and had never been married; that immediately after the marriage ceremony Pearl Copeland Miller and the defendant left Giles county to return to Monroe county, West Virginia, and without cohabiting in Giles county; that they did, on their way back from Giles county, and following the marriage ceremony, cohabit in Monroe county, West Virginia, where they were each subsequently arrested and returned to Giles county. The defendant introduced no evidence upon his trial.

There were two indictments returned against the accused during the progress of the prosecution. He was first jointly indicted with Pearl Miller and to that indictment she entered a plea of guilty and was sentenced to the penitentiary. This indictment contained two counts which read:

"The grand jurors of the Commonwealth of Virginia, in and for the body of the county of Giles, impanelled and sworn at the term hereof commencing on the 13th day of December, 1938, and now attending upon the said court, upon their oath present that Pearl Copeland Miller and Oren Welden Atkins in the said county on the ...... day of September, 1938, did unlawfully and feloniously marry each other, while she the said Pearl Copeland Miller was lawfully married to another, and during the life of the former husband of the said Pearl Copeland Miller, against the peace and dignity of the Commonwealth of Virginia.

"And the jurors aforesaid upon their oaths aforesaid do further present that the said Oren Welden Atkins, on the day and year aforesaid in the county aforesaid unlawfully and feloniously was present counselling, aiding, abetting and assisting the said Pearl Copeland Miller, the felony aforesaid, to do and commit against the peace and dignity of the Commonwealth of Virginia."

Accused, upon his arraignment, demurred to the indictment upon several grounds. As we comprehend the questions raised by the demurrer, the following grounds are mainly relied upon by counsel for accused:

"The first count is bad as to him for the reason that it charges him as principal in the first degree; that is to say, he is therein charged with the crime of bigamy, when he is not included within the language of the statute, being an unmarried person.

"The first count is further defective and invalid because the unmarried person party to a bigamous marriage is not within the terms of the statute creating the offense, which was not an offense at common law.

\*　　\*　　\*　　\*　　\*　　\*　　\*

"The second count is predicated upon the first count which is vague, indefinite and uncertain, and is insufficient upon which to charge this defendant as an aider and abettor.

"The said second count in the indictment does not charge a substantive offense, or any offense, but purports only to charge this defendant with counselling, aiding and abetting Pearl Copeland Miller in the commission of the crime of bigamy, when as a matter of law and fact the unmarried person who marries a married person can not be guilty as an aider and abettor because the crime of bigamy is not a common law offense, and is only made so by statute in Virginia, and the terms of the statute *does* not include the unmarried person to such ceremony."

■ There can be no doubt that the demurrer presented a question of law which only the court could decide. The court in clear and unambiguous language did sustain the demurrer to the indictment and "to each count thereof."

This was done by order dated March 21, 1939. As this action of the court is most material, the order is here quoted:

"This day came again the Commonwealth by her attorney and the defendant appeared in response to his recognizance and was represented by counsel and the court having fully considered the demurrer to the indictment and each count thereof, which indictment was made and returned on December 13th, 1938, is of opinion to and doth sustain said demurrer to the said indictment and to each count thereof.

"It is therefore considered and ordered by the court that the defendant be discharged from said indictment and may go thereof without day."

Following the entry of this order, the accused was again arraigned upon a second indictment which charged him with aiding and abetting Pearl Miller in the commission of the crime of bigamy. Upon his arraignment, he filed a plea of *autrefois acquit*. The plea is carefully drawn and sets forth in detail all the court proceedings relative to the case.

The crux of the plea of *autrefois acquit* is that by his demurrer the accused admitted the allegations of fact in the first indictment and submitted to the court, by the demurrer thereto, the legal proposition that the indictment did not charge him with the commission of a criminal offense and that the second indictment charges the commission of the same felony set forth in the first indictment; that having been acquitted on the merits and discharged from custody, he should not be required to answer the second indictment.

The attorney for the Commonwealth filed a demurrer to the plea of *autrefois acquit*, which demurrer was sustained. Upon his plea of not guilty, accused was tried by a jury, convicted, and sentenced by the court to the penitentiary.

The action of the court in sustaining the demurrer to the plea of *autrefois acquit* is assigned as error.

No question of former jeopardy (though analogous to the plea filed), was raised by the plea interposed by the

accused as it is founded solely on the legal proposition that having once been acquitted on the merits and discharged "without day"—he is protected from further prosecution.

It has been suggested that sections 4764 and 4774 of the Code throw light on the question involved. We do not think so. The question is, did the trial court sustain the demurrer to the first indictment and each count thereof on the ground that, as a matter of law, an unmarried man cannot be an accessory to the crime of bigamy? As stated, this question, in our opinion, was concretely presented by the demurrer filed by the accused. The Attorney-General, however, contends that the facts set forth in the plea of *autrefois acquit* do not sustain the contention of the accused; that it was not established that the accused had been discharged from the first indictment because the court ruled that the acts with which he was charged did not constitute a crime. This contention is untenable. If the order sustaining the demurrer contains any language of an ambiguous nature, we fail to perceive it. There is not a syllable which indicates that the demurrer was sustained without prejudice. There is not a word in it which indicates that the demurrer was sustained on the ground that it was defective in form. The court, as evinced by the order, sustained the demurrer as to each count thereof on the ground relied upon by the accused and discharged him "without day". This, in our opinion, was an ultimate decision upon a question of law, and the conclusion of the court is controlled by the decision of this court in *Commonwealth* v. *Perrow*, 124 Va. 805, 815, 97 S. E. 820, 821. In that case it appears that Perrow was convicted and fined $75 upon a warrant issued by a justice of the peace of Buckingham county charging him with "soliciting labor illegally and contrary to" law. He appealed to the circuit court, and the court, being of opinion that the statute involved was unconstitutional and void, quashed and dismissed the warrant.

Judge Kelly, delivering the unanimous decision of the court, had this to say: "There was no jury trial in the instant case, and we have not overlooked the fact that

jeopardy, as ordinarily understood in legal parlance, refers to the danger of conviction and punishment which a defendant incurs in a criminal case where a jury has been empaneled and sworn. But we are of opinion that the spirit and purpose of the immunity intended to be secured by the doctrine in question will be violated whenever a defendant in any criminal case has been formerly tried by competent authority—whether court or jury—and discharged upon a defense constituting a bar to the proceeding, whether that defense be rested upon the law or the facts." This conclusion is in conformity with the rule announced in Am. & Eng. Ency. Law, Vol. XXIV, p. 831, that:

"A fact once determined by a court of competent jurisdiction in a criminal proceeding cannot again be litigated between the same parties unless a different rule applies in criminal proceedings from that which obtains in civil proceedings but it is well settled that the rule is the same in both classes of cases. *Com.* v. *Ellis*, 160 Mass. 165 [35 N. E. 773]."

See also, *Rosser* v. *Commonwealth*, 159 Va. 1028, 1033, 167 S. E. 257, where Mr. Justice Gregory distinguishes the *Perrow Case* from the case of *Dulin* v. *Lillard*, 91 Va. 718, 20 S. E. 821.

■ It is with regret that we reach the conclusion that the trial court erred in sustaining the demurrer to the plea of *autrefois acquit* for the reasons hereafter set forth, but we repeat what was said by this court in *Elliott* v. *Commonwealth*, 172 Va. 595, 601, 1 S. E. (2d) 273, 276:

"However conclusively the evidence shows the guilt of the accused, when it is admitted that he has been tried contrary to law, then to hold that he has had a fair trial under the law is a *non sequitur*.

\* \* \* \* \* \* \*

■ "The chief concern of the appellate court is not to sit as a jury and determine the guilt or innocence of an accused, but its chief concern is to ascertain whether or not an accused has been accorded a fair and impartial trial according to law."

The fundamental question involved in this case is of so great importance to the judiciary, the legal profession and to society, that we feel it our duty to express our view in regard to its determination. However, this has been so ably done by Mr. M. Ray Doubles, Dean, and Mr. J. Westwood Smithers, Professor, of the School of Law of the University of Richmond, in a paper prepared by them, that we are content to adopt their views therein expressed as the conclusion of the court:

"May an unmarried person who marries another, knowing that the latter is already married, be convicted of aiding and abetting the commission of bigamy by the latter?

"As the Court had occasion to say in the case of *Farewell* v. *Commonwealth*, 167 Va. 475, 189 S. E. 321, decided in 1937, 'Bigamy was not punishable at common law, but was regarded as an offense of ecclesiastical cognizance. It was, however, during the reign of Edward I of England, recognized as a statutory offense . . . ' In 1604, by the Act of 1 James I, c. 2, it was made punishable as a felony in the temporal courts, but only when committed 'within his majesty's dominions of England and Wales.' Thus by the terms of the statute it was made local to England and Wales, and our Virginia Code, Section 3, incorporates as a part of the law of Virginia only those Acts of Parliament 'made in aid of the common law prior to the fourth year of the reign of James the First, of a general nature, not local to England.'

"The statute punishing bigamy in Virginia, Michie Code 1936, Section 4538, provides as follows: *'Person marrying, when former husband or wife is living; how punished.*—If any person, being married, shall, during the life of the former husband or wife, marry another person in this State, or if the marriage with such other person take place out of the State, shall thereafter cohabit with such other person in this State, he shall be confined in the penitentiary not less than three nor more than eight years.'

"The statute in Virginia, unlike the statute of some of the states, does not in terms make the competent party to

the bigamous marriage punishable. Illustrative cases from other jurisdictions which arose under statutes which in terms make the competent party punishable are: *State* v. *Caulder* (Sup. Ct. of Mo.), 262 S. W. 1023; *State* v. *Sayko*, 37 Idaho 430, 216 P. 1036; *Baker* v. *State*, 79 Fla. 365, 84 So. 99; *Brooks* v. *State*, 74 Ark. 58, 84 S. W. 1033; *Arnold* v. *State*, 53 Ga. 574. Nor does the bigamy statute in Virginia provide in terms for the punishment of accessories, aiders, and abettors.

■■ "At common law, criminal liability is not limited to those persons who actually commit the criminal deed. All other persons who assist in the commission of the crime, or counsel or procure another to commit the offense, or aid or assist the one who has committed an offense are punishable as parties thereto. In general these same principles apply to statutory offenses, and statutes creating offenses not punishable at common law carry with them the incidents of common law offenses in absence of compelling reason to the contrary.

■ "In an early Virginia case, Judge Lyons said: 'There are rules for construing statutes; and one is, that the best construction of the statute is, to construe it as near to the reason of the common law as may be, and by the course which that observes in cases of its own.' *Chichester* v. *Vass*, 1 Call (5 Va.) 83 at page 102, 1 Am. Dec. 509.

■ " 'At common law all persons present giving aid and comfort to another committing an offense, even a felony, are regarded as principals. Therefore, if a statute makes the doing of a thing criminal, it includes, with the actual doer, persons who are present lending their countenance and aid . . . . Whatever is newly created by statute draws to itself the same qualities and incidents as if it had existed at the common law. In other words, the statute is to be interpreted after the rules and incidents of the common law . . . . When a statute creates a new felony, whether out of what was before innocent, or was a misdemeanor, those who are aiding one who personally commits it are prin-

cipals.' Bishop, Statutory Crimes, 2nd Ed., Sections 135, 139, and cases cited.

" 'Statutes defining and punishing offenses are also to be construed in accordance with the common law principles in relation to principals and accessories.' Clark and Marshall, Crimes, 3rd Ed. (1927), Section 31e.

"In *Commonwealth* v. *Carter*, 94 Ky. 527, 23 S. W. 344, the defendant was prosecuted as an accessory to the statutory offense of breaking into a storehouse. After saying that 'there can be no doubt of the correctness of the rule that in statutory offenses, where the plain intent of the statute is to inflict punishment only on the person actually committing the offense, others cannot be brought within its provisions as principals upon proof that they were aiders and abettors', the court held that this statute was not of that type, and continued: 'There is as much reason for punishing those aiding and abetting in a felony created by statute as there is in a felony at common law.'

"Is there any reason why this general common law principle is inapplicable to the crime of bigamy?

"It may be argued that, inasmuch as an unmarried person is incapable of committing bigamy as a principal in the first degree, therefore he cannot be convicted of committing the offense as a principal in the second degree. In this connection our attention is called to Section 4764 of the Code which provides: 'In the case of every felony, every principal in the second degree and every accessory before the fact may be indicted, tried, convicted, and punished in all respects as if a principal in the first degree . . . ' Under this statute a principal in the second degree receives the same punishment as a principal in the first degree, but obviously it was not intended to grant immunity to those parties who would have been classified as second-degree principals before the statute was enacted.

"It is well settled with regard to both common law and statutory offenses, that the mere fact of incapacity to commit the offense as a principal in the first degree does not prevent one who aids and abets the principal offender

from being held criminally liable as a principal in the second degree. This question was decided in Virginia in the case of *Law* v. *Commonwealth* (1881), 75 Va. 885, 40 Am. Rep. 750, where a boy under the age of fourteen years and therefore conclusively presumed to be incapable of committing rape as a principal in the first degree, was nevertheless held to have committed rape as a principal in the second degree when he aided and abetted the commission of the offense by another. Similarly, in the famous *Lord Audley's Case* (C. P. 1631), Hutt. 115, a husband was held guilty as a principal in the second degree to the rape of his own wife. For further illustrations of this well established proposition, see note, 25 Virginia Law Review 844, 845-6.

 "When the legislature creates a statutory offense, does its failure to provide for the guilt of accomplices indicate an intent to exclude such parties from criminal responsibility? We believe that in answering this question a distinction should be noted between offenses necessarily involving the cooperative action of two or more persons and offenses which may be committed by one person alone. With respect to the latter class of cases, it seems clear that such an omission in the statute is not generally considered significant. Thus where statutes confine the offense of embezzlement to agents, employees, or persons holding a relation of confidence or trust toward the owner of the property misappropriated, and make no mention of accomplices, persons not occupying a fiduciary relation toward the owner are convicted of the offense as accessories or as principals in the second degree. *State* v. *Nahoum* (1931), 172 La. 83, 133 So. 370. And with respect to the former class of cases, where the question involves the liability of persons other than the necessary cooperating party, there seems to be no reasonable ground for supposing that the legislative intent was directed to the exclusion of the familiar liability of a third person who aids and abets the commission of the crime. This view has the support of all the text writers whose works we have examined, with reference to the crime of bigamy.

"Wharton, in his work on Criminal Law (12th Ed.), Sec. 2035, says: 'To bigamy, as to all other offenses, applies the law of principal and accessory, as hereinbefore expressed. Where the offense is a felony, then one present, knowingly aiding and abetting, even as a party, is a principal in the second degree; and persons promoting, without being present, are accessories before the fact. Where the offense is a misdemeanor, all concerned are principals.' See also, Miller on Criminal Law, Section 133 (c), and May's Criminal Law, 4th Ed., Section 138, page 212.

"In *Boggus* v. *State* (1866), 34 Ga. 275, a third person who knowingly aided and abetted a bigamous marriage by words of encouragement and by himself being validly married at the same time, was held guilty of bigamy as a principal in the second degree. The court said: 'Suppose the Rev. Mr. Parks, who officiated as clergyman in marrying Davis and Miss Windham, had known that Davis was a married man at the time, would he not have been guilty of the offense of bigamy in the second degree?

" 'And, because Boggus was a single man and, therefore, could not have been convicted of bigamy, as principal, himself, if he had married Miss Windham, yet, why could he not be guilty in the second degree, as present, aiding and abetting Davis?'

"In *State* v. *Warady* (1910), 78 N. J. L. 687, 75 A. 977 [979], a third person who knowingly aided and abetted a bigamous marriage was held guilty as an aider and abettor of the crime of bigamy, which was then a misdemeanor in New Jersey. The court said: 'The defendant below, though he did not marry the woman himself, was shown to the satisfaction of the jury to have been present at the ceremony, to have urged the parties to contract the marriage, and to have aided them in various ways in so contracting it. He was thus a direct participant in the crime as a principal in the second degree. The fact that he is described in the indictment as abetting, counseling, and assisting, etc., does not alter the nature of the offense. He remains a principal.'

"When the statutory offense is of such a nature that it cannot be committed by the principal offender without the assistance and cooperation of another, *and when the liability of such other is in question,* it can be forcefully argued that the legislature had in contemplation the participation of the necessary cooperating party and that its failure to provide for the guilt of such party logically implies an intent not to make such party punishable. *Lott* v. *United States* (1913), 205 F. 28, 46 L. R. A. (N. S.) 409. See note 25 Virginia Law Review 844, 848. In our bigamy statute, quoted above, the 'other person' participating in a bigamous marriage with a married person is mentioned three times and yet there is no provision for his or her punishment.

"However, an examination of cases involving other statutory offenses of a similar nature does not lend substantial support to this argument. In the leading English case of *Regina* v. *Tyrrell* (1894), 1 Q. B. 710, it was held to be no offense for a girl between the ages of thirteen and sixteen to aid and abet a male person in the commission of the statutory misdemeanor of having unlawful carnal knowledge of her. This decision was based, however, not on the mere negative ground that the legislature omitted to provide punishment for one whose participation it must have contemplated, but on the affirmative ground that the statute 'was passed for the purpose of protecting women and girls against themselves' and that it would be practically impossible to obtain convictions under the statute if it were held to create an offense in the woman or girl as well as in the man. Cf. *Bibbs* v. *Commonwealth* (1921), 129 Va. 768, 106 S. E. 363.

"In *Gebardi et al.* v. *United States* (1932), 287 U. S. 112, 53 S. Ct. 35 [38], 77 L. Ed. 206, 84 A. L. R. 370, it was held that although the Mann Act includes specifically those who 'aid or assist' in the transportation of women for purposes of prostitution, nevertheless a woman who merely consented to being transported for such purposes without giving further aid or assistance was not guilty of a violation of the Act. In this case, the failure of Congress ex-

pressly to provide for the punishment of the woman transported was given as a reason for the decision, but the fact that the female in such cases is the victim for whose protection the statute was enacted seems clearly to be a contributing reason. The court cited *Regina* v. *Tyrrell, supra,* and said: 'The principle, determinative of this case, is the same.'

"In cases involving adultery there is a conflict of opinion as to the guilt of the unmarried participant in intercourse. *In Re Cooper* (1912), 162 Cal. 81, 121 P. 318, it was held that an unmarried woman would not be guilty of adultery as defined in that State and hence was not liable for aiding and abetting the commission of the offense. But in *State* v. *Case* (1912), 61 Or. 265, 122 P. 304, the Oregon court held that an unmarried woman who has carnal intercourse with a married man is guilty of aiding and abetting the offense of adultery. Where simple fornication is punishable, the fact that the unmarried party may be convicted of such crime may explain the failure to convict him as a party to the crime of adultery. In *Commonwealth* v. *Lafferty* (1849), 6 Gratt. (47 Va.) 672, the General Court of Virginia held that an unmarried man who participated in sexual intercourse with a married woman was guilty of fornication.

"The cases lending the strongest support to the contention, that the failure of a statute to provide for the liability of a contemplated, necessary participant shows an intent not to punish such participant, are the decisions acquitting the purchaser of liquor sold in violation of statute. See *Lott* v. *United States* (1913), 205 F. 28, 46 L. R. A. (N. S.) 409. However, it is believed that the practical difficulty of enforcement of such statutes which would have resulted from the conviction of such purchasers was largely responsible for such decisions. The Supreme Court of the United States, in speaking of *Lott* v. *United States* and the statutes involved in such cases, said: 'Probably it was thought more important to preserve the complete freedom of the purchaser to testify against the seller than to punish him for making the purchase.' *United States* v. *Farrar* (1930),

281 U. S. 624, 50 S. Ct. 425, 427, 74 L. Ed. 1078, 68 A. L. R. 892. Other cases holding the purchaser not punishable are based on reasons other than the supposed intent of the legislature. In *State* v. *Teahan* (1882), 50 Conn. 92, it was held that, while the purchaser *induces* the sale of liquor, he does not assist or abet the seller in making the sale.

"In Virginia no such reasoning was persuasive. In *Crosby* v. *Commonwealth* (1922), 132 Va. 518, 110 S. E. 270, the purchaser of liquor sold in violation of statute was held to be an accomplice to the crime, the Court stating that 'of this we have no doubt . . . '. See also, *Faulkner* v. *Town of South Boston* (1924), 139 Va. 569, 123 S. E. 358.

"In none of the cases considered above does the decision seem to rest on the legislative intent as gathered solely from the mere omission in the statute of any provision for the guilt of a contemplated, necessary party. The intent of the legislature not to punish such party is found either in the purpose of the statute to protect such party, the practical difficulty of convicting the principal offender if the cooperating party be held punishable, or in the fact that the cooperating party is nevertheless liable to punishment for an equally serious, but distinct, offense. None of these reasons are present in our consideration of the Virginia bigamy statute. No one would contend that the statute was enacted primarily to protect an unmarried person who knowingly enters into a bigamous marriage. To hold such a person guilty as a party to the crime of bigamy would not create any substantial obstacle to the enforcement of the statute. Unlike the case of an illegal sale of liquor, the discovery and prosecution of bigamy does not depend vitally upon the testimony of the unmarried party to the bigamous marriage. Unlike the case of an unmarried person who engages in intercourse with a married person, the unmarried party must either be held guilty of aiding and abetting the crime of bigamy or else go unpunished. This is clearly true in such a case as the one before us where the parties have not cohabited in the state.

"It is argued that to hold an unmarried person guilty as a party to the crime of bigamy when he or she knowingly marries a married person would result in convicting some supine girl who, completely under the influence of a man whom she knew to be married, might give away to his persuasions and entreaties and marry him. On the other hand, to hold that such a person is not a party to the crime of bigamy would enable an unmarried man of mature years and experience to persuade a young married girl to marry him without fear of punishment.

"Our conclusions drawn from our examination of cases involving other statutory offenses are supported by the only two decisions of which we are aware that involve the liability of the unmarried party who knowingly enters into a bigamous marriage, where there is no express statutory provision for such liability.

"In *Regina* v. *Brawn and Webb* (1843), 1 Car. & K. 144, 174 English Reprint 751, the English bigamy statute expressly provided that 'every person counselling, aiding, and abetting such offender, shall be guilty of felony,' 9 Geo. IV, c. 31, s. 22, but included no express mention of the unmarried party to the marriage. An unmarried man who knowingly married a married woman was convicted under the statute, Lord Denman, C. J., telling the jury: 'With regard to the other prisoner, Webb, you are to say whether he counseled Mrs. Brawn to commit the felony, but to constitute the offense in him, I think that he must be shewn to have known that she was a married woman. You will say on the evidence whether you are satisfied that he knew it.'

"In *Burgess* v. *State* (1920), 88 Tex. Cr. R. 146, 225 S. W. 182, 183, there was nothing in the Texas bigamy statute providing for the punishment of accomplices. One Burgess, who had been convicted of the felony of bigamy, assigned as error the refusal of the trial court to charge the law of accomplice testimony as applicable to the unmarried woman (a Mrs. Evans) who was the other party to the bigamous marriage. The Texas Court of Criminal Appeals, on the original hearing, affirmed the action of the trial

court, saying: 'This Court has often held that one is not an accomplice who cannot be prosecuted for the offense with which the accused is charged. * * * It goes without saying that Mrs. Evans could not be prosecuted for the offense of bigamy; she not having a lawful spouse then living.' On rehearing, however, the Court, 'after a careful examination of the authorities' reversed its holding that Mrs. Evans was not an accomplice. After quoting Wharton on Criminal Law (11th Ed.), Sections 2018 and 2019, the Court held that one present, knowingly aiding and abetting a bigamous marriage, even as a party, is a principal. The Court further said: 'If Mr. Wharton is correct, and it must be conceded that no authorities holding to the contrary are before us, then Mrs. Evans, if she knew that appellant was married before she entered into said bigamous relation with him, would come under the provisions of our law relative to accomplice testimony, when she became a witness in the case.'

"In commenting on this decision May's Criminal Law, 4th Ed., Section 138 says: 'Such a holding appears to make generally unnecessary statutes which punish any unmarried person who knowingly marries the spouse of another.'

"Judge Justin Miller, of the United States Court of Appeals for the District of Columbia, in his book on Criminal Law, Section 133(c), written in 1934 when he was Dean of the School of Law of Duke University, said: 'The statutes of some of the states expressly make the competent party to the bigamous marriage criminally liable if he or she knew of the first marriage, and, even in the absence of such a statute, he or she should be liable as a principal in the second degree, on principle.' "

The judgment of the trial court will be reversed and annulled and an order will be entered by this court discharging the accused from custody.

*Reversed.*