## CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Ryan Holloway

Case No. (Misd.) 4131

Commonwealth of Virginia

v.

Sheron Parker

Case No. (Misd.) 4141

May 22, 1996

By Judge Arthur B. Vieregg, Jr.

Each of the defendants in the captioned cases, Ryan Holloway and Sheron Parker, was indicted for driving under the influence of alcohol or drugs (DUI). Each filed pretrial motions to dismiss these indictments based on the related defenses of *autrefois acquit* and *res judicata*. These motions were briefed and, on April 6, 1996, argued. I then took the motions under advisement. I am now prepared to decide them.

### I. *Background*

In connection with their respective DUI arrests, each defendant's driving privileges were suspended by a magistrate in accordance with Virginia Code § 46.2-391.2 (ALS Suspension). A Fairfax General District Court judge subsequently dismissed the DUI charges against both defendants, concluding that a DUI prosecution after an ALS Suspension constituted multiple punishment for the same crime and contravened the Double Jeop-

ardy Clause. Virginia law afforded the Commonwealth no right to appeal these adverse decisions.

Thereafter, in *Tench v. Commonwealth*, 21 Va. App. 200 (1995), the Virginia Court of Appeals ruled that an ALS Suspension did not constitute punishment and accordingly the Double Jeopardy Clause did not bar a DUI prosecution after such a suspension. In the aftermath of *Tench*, the Commonwealth's Attorney obtained indictments for DUI offenses against Holloway and Parker.

## II. *The Plea of Autrefois Acquit*

The ancient English plea of *autrefois acquit* precluded the King from prosecuting a subject for an offense, if previously the subject had been tried and acquitted of that offense. *See, United States v. Wilson*, 420 U.S. 332, 340 (1975) (citing 3 E. Coke, *Institutes*, 212-13 (6th ed. 1680)). The plea was one of a triumvirate of common law pleas precluding multiple trials of the same person for the same crime, the other two being *autrefois convict* and pardon. *Id*. As the English common law developed, the concept of "jeopardy" became associated with the two *autrefois* pleas. Thus, Blackstone wrote: "[it is a] universal maxim of the common law of England, that no man is to be brought into jeopardy of his life more than once for the same offense." *See, Wilson*, 420 U.S. at 340 (*quoting* 4 Blackstone, *Commentaries*, 335-36 (1st ed. 1769)); *and see, Green v. United States*, 355 U.S. 184, 187 (1957).

*Autrefois acquit, autrefois convict,* and pardon constituted the foundation for the Fifth Amendment's Double Jeopardy Clause. *United States v. Scott*, 437 U.S. 82, 87 (1978). In the early days of our republic, since most criminal prosecutions went to trial and final judgment without appeal, the Double Jeopardy Clause presented few difficulties of application or interpretation. *Id*. However, later developments in American law, especially pretrial dismissals of charges before the attachment of jeopardy, have generated more complicated issues of when an accused might twice be made to answer for the same crime. *See, United States v. DiFransesco*, 449 U.S. 115, 126 (1980) (and cases cited at the beginning of Part III). And, significantly for purposes of this decision, the Supreme Court of Virginia has twice held that the defense of *autrefois acquit* prohibits the renewed prosecution of an accused for the same crime even if the prior charge against him had been dismissed prior to trial (and thus before jeopardy had attached) on solely legal grounds. *Adkins v. Commonwealth*, 175 Va. 590

(1940); *Commonwealth v. Perrow*, 124 Va. 805 (1919). Holloway and Parker base their pleas of *autrefois acquit* on these decisions.

In *Adkins*, the grand jury handed down two indictments. The first indictment charged the defendant with two offenses: bigamy and aiding and abetting bigamy. The second indictment charged Adkins only with aiding and abetting bigamy. At his arraignment, Adkins challenged the legal sufficiency of the first indictment, contending that only a married person could properly be prosecuted for bigamy. Adkins' demurrer was sustained. When arraigned immediately thereafter on the second indictment for aiding and abetting bigamy, Adkins interposed the plea of *autrefois acquit.* Adkins' plea was denied. He was tried and convicted by a jury of aiding and abetting bigamy, sentenced, and incarcerated. *Adkins,* 175 Va. at 595.

On appeal, the Virginia Supreme Court emphasized that Adkins' demurrer to the first indictment involved a question of law for the court. 175 Va. at 594. The Court further emphasized that the plea of *autrefois acquit* to the second indictment was not based upon double jeopardy grounds but only on the legal proposition that "having once been acquitted on the merits and discharged [that] he is protected from further prosecution." 175 Va. at 596. Although, as applied under the English common law, *autrefois acquit* had necessarily required the attachment of jeopardy, the Supreme Court of Virginia nevertheless reversed Adkins' conviction on the basis of that ancient writ, concluding that even a pretrial dismissal as a matter of law barred further prosecution. Quoting with approval the following statement by Justice Kelly in *Perrow*, Chief Justice Campbell declared:

> There was no jury trial in the instant case, and we have not overlooked the fact that jeopardy, as ordinarily understood in legal parlance, refers to the danger of conviction and punishment which a defendant incurs in a criminal case where a jury has been empaneled and sworn. *But we are of [the] opinion that the spirit and purpose on the immunity intended to be secured by the doctrine in question will be violated whenever a defendant in any criminal case has been formerly tried by competent authority — whether court or jury — and discharged upon a defense constituting a bar to the proceeding, whether that defense be rested upon the law or the facts.*[1] (Emphasis added.)

---

[1] The Court's opinion in *Perrow* is even closer to the facts of this case. In *Perrow*, the accused was charged with the illegal solicitation of labor; the defendant was convicted before the justice of the peace; and he appealed to the circuit court. The circuit court

The Supreme Court of Virginia has not overruled *Adkins* or *Perrow*. I am therefore bound to follow these decisions and to find that the General District Court's earlier pre-jeopardy dismissal of DUI charges against Holloway and Parker on Fifth Amendment grounds bars further prosecution of the same DUI offenses.[2]

## III. *Res Judicata*

### A. *The Applicability of the Criminal Res Judicata Defense*

The defendants also assert that the doctrine of *res judicata* bars the Commonwealth's renewed DUI charges. *Res judicata* is a judicially made rule. It requires that where a court has entered a final judgment on the merits, the judgment is binding on the parties or their privies as to any matter which was or might have been litigated in the case giving rise to that final judgment. *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 597 (1948). The United States Supreme Court has recognized the application of this doctrine in criminal as well as civil cases. *United States v. Oppenheimer*, 242 U.S. 85 (1916); *Collins v. Loisel*, 262 U.S. 426 (1923); *United States v. Cejas*, 817 F.2d 595, 598 (9th Cir. 1987).[3] Some states, but not all, have also recognized the doctrine of criminal *res judicata*. *Res Judicata in Criminal Cases*, 27 Tex. L. Rev. 230 (1948).

In the criminal context, the bar of *res judicata* is closely related to the bar of double jeopardy. Both doctrines dictate a former judgment of either conviction or acquittal bars a renewed prosecution of the same offense. *Generally, see*, 1B James W. Moore et al., *Moore's Federal Practice*, ¶ 0.418[2] (2d ed. 1982); *also see, North Carolina v. Pearce*, 395 U.S. 711 (1969). However, *res judicata* and double jeopardy diverge in several important respects. Double Jeopardy bars retrial in some cases where *res judicata* is inapplicable because no final judgment has been entered. Conversely, the Double Jeopardy Clause, by definition, cannot bar the renewed

---

dismissed the case before trial on the grounds that the anti-soliciting law was unconstitutional. The Court affirmed, although no trial on the merits had occurred.

[2] The Commonwealth advanced no argument as to the applicability of the defendant's *autrefois acquit* plea.

[3] Application of *res judicata* in civil and criminal cases appears to vary in at least one significant way. In civil cases, both parties are not bound by a judgment if both do not have a right of appeal. *Restatement of Judgments, Second*, § 28, Comment a, 274 (1982). The same is not necessarily the case in criminal cases. *See, e.g., United States v. De Angelo*, 138 F.2d 466, 468 (3d Cir. 1943).

prosecution of an accused who was dismissed prior to trial because the dismissal was entered before jeopardy attached. *Generally, see,* 1B James W. Moore et al., *Moore's Federal Practice,* ¶ 0.418[2] (2d ed. 1982). But, *res judicata* may dispose of a case with finality without the attachment of jeopardy. *United States v. Oppenheimer, supra; Collins,* 262 U.S. 426. It is this latter application of criminal *res judicata* upon which the defendants base their motion to dismiss.

As noted above, both the federal courts and some state courts recognize the application of the bar of criminal *res judicata.* However, since the Virginia appellate courts have never recognized the bar of criminal *res judicata,*[4] except in a Double Jeopardy or post-jeopardy context,[5] the defendants' criminal *res judicata* defense depends upon whether the Virginia appellate courts would recognize the criminal *res judicata* defense based upon a pre-jeopardy dismissal.[6]

---

[4] In *Justice v. Commonwealth,* 81 Va. 209 (1885), the Supreme Court of Virginia was confronted with the defense of *res judicata* in the context of a prosecution for selling a lottery ticket. Other prosecutions of agents of the company selling the tickets had resulted in acquittals. After stating why even civil *res judicata* principles would not aid the accused, the Court stated: "But the doctrine of [*res judicata*], strictly speaking, is not applicable to the Commonwealth in a criminal prosecution. The nearest approach to it is the doctrine, founded on the maxim of the common law, that no one shall be twice put in jeopardy for the same offense." 81 Va. at 217. However, in a later decision, which post-dated the United States Supreme Court decision recognizing criminal *res judicata* in *Oppenheimer,* the Court stated that it was "unprepared to say that no case can possibly arise in which the doctrine of estoppel or *res judicata* can be invoked against the Commonwealth." *Seymour v. Commonwealth,* 133 Va. 775, 781 (1922).

[5] The Virginia courts have recognized the doctrine of collateral estoppel in criminal cases. *See, e.g., Simon v. Commonwealth,* 220 Va. 412 (1979).

[6] By adoption of the prosecutions' brief in *Commonwealth v. Kim,* CR95-1507, 1509, 1481, and 1440 (Circuit Court of Arlington) ("Arlington Brief"), the Commonwealth contends that the Supreme Court of Virginia rejected the criminal *res judicata* defense in *Slayton v. Commonwealth,* 185 Va. 371 (1946). A fair reading of *Slayton,* however, discloses that the Court *only* held that collateral estoppel (one form of *res judicata)* was inapplicable to the facts before it: "the weight of authority supports the rule that the acquittal of one charged with a crime is not a bar to a prosecution for perjury for testimony given by him at the trial, although a conviction would necessarily import a contradiction of the verdict of the former case." 185 Va. at 382. The Court's ruling was confined to cases for prosecution of perjured statements which earlier had eventuated in a defendant's acquittal. It did not constitute an "across the board" rejection of the defense of criminal *res judicata.*

In *Adkins*, the Court applied the doctrine of *autrefois acquit* to discharge a defendant on account of a prior pre-jeopardy dismissal, circumstances more analogous to those in which other courts have discharged defendants on *res judicata* grounds. *See, Oppenheimer, supra* (Court applied *res judicata* based upon a former pre-judgment acquittal entered on statute of limitations). Furthermore, although technically *Adkins* was decided on the basis of *autrefois acquit*, the Court also approvingly quoted the following statement:

> A fact once determined by a court of competent jurisdiction in a criminal proceeding cannot again be litigated between the same parties unless a different rule applies in criminal proceedings from that which obtains in civil proceedings but it is well settled that the rule is the same in both classes of cases. *Commonwealth v. Ellis*, 160 Mass. 165, [35 N.E. 773].

175 Va. at 597 (quoting Am. & Eng. Ency. Law, vol. XXIV, p. 831). The foregoing passage, read in context, suggests that criminal *res judicata* principles were a decisive factor in the result reached by the Court in *Adkins*.

For the foregoing reasons, it may be anticipated that the Virginia appellate courts, if confronted with the present facts, would apply the defense of criminal *res judicata* to bar the renewed prosecution of these defendants.[7]

## B. *The Commonwealth's Contentions*

In response to the foregoing analysis, the Commonwealth contends that criminal *res judicata* is inapplicable because (1) the General District Court Judge's dismissal was not an acquittal on the merits; and (2) as a judicially

---

[7] My colleague, the Honorable Thomas S. Kenny, has applied the defense of criminal *res judicata* to bar a renewed DUI prosecution, identical to those involved here, reasoning that civil *res judicata* principles apply to criminal cases. *Commonwealth v. Fiero*, Misd. No. 4128 (Cir. Ct. of Fairfax County, April 24, 1996) [*supra*]. Although the Supreme Court of the United States also based its recognition of the defense by analogy to civil *res judicata* principles, *see Oppenheimer, supra,* I am convinced that Virginia appellate courts would necessarily apply *res judicata* principles in doing so, especially where as here the Commonwealth enjoyed no right of appeal. *See, Restatement of Judgments, Second*, § 28(1), 273 (1982) (party not bound by prior judgment if, as a matter of law, that party is not afforded a right of appeal). Being unable to reconcile the result in *Adkins*, however, with the premise that Virginia appellate courts would refuse to apply the doctrine of criminal *res judicata* based upon pre-jeopardy dismissal, I simply reach the same conclusion as Judge Kenny on a more conservative basis of *stare decisis*.

created doctrine, the Court should not apply criminal *res judicata* if it would "shield crime or grant immunity to criminals." Arlington Brief, at 4 (quoting *Slayton*, 185 Va. at 383).

### 1. *The Contention That the Dismissal Below Was Not "On the Merits"*

The Commonwealth's "not on the merits" argument assumes that civil *res judicata* principles govern the application of that defense in criminal cases. If so, decisions of the Supreme Court of Virginia, the Supreme Court of the United States, and the Fourth Circuit Court of Appeals all confirm that pretrial dismissals may constitute "on the merits" dismissals. *Oppenheimer, supra*; *Loisel, supra*[8]; *Thomas v. Consolidated Coal Co.*, 380 F.2d 69, 80 (4th Cir. 1967); *Griffin v. Griffin*, 183 Va. 443, 450 (1945). Moreover, in *Thomas*, the Fourth Circuit held that a pretrial dismissal of a civil case on the basis of *res judicata* is a dismissal "on the merits." Since civil *res judicata* and Double Jeopardy are closely related concepts, both promoting the policy of finality of litigation in their respective spheres, if the elements of civil *res judicata* and criminal *res judicata* are the same, as the Commonwealth assume, *Thomas* constitutes persuasive authority that a pretrial dismissal based upon the Double Jeopardy Clause is a sufficient basis for the application of criminal *res judicata*.

### 2. *The Commonwealth's Public Policy Argument*

The Commonwealth finally argues that the defendants' *res judicata* defense should be rejected on public policy grounds. In effect the Commonwealth argues (i) *res judicata* is a judicially created doctrine to promote the finality of litigation; (ii) in this case, that policy is counterbalanced by a stronger policy in favor of the enforcement of criminal laws and especially DUI laws; and (iii) the doctrine of *res judicata* accordingly should not be applied to bar the DUI charges against Holloway and Parker. It is either an argument in favor of not applying *res judicata* in criminal cases

---

[8] Nowhere in its arguments does the Commonwealth account for *Oppenheimer* and *Loisel*. In both decisions, the United States Supreme Court held that pretrial dismissals were a sufficient predicate for the application of *res judicata* to bar the renewed prosecution of an accused on the same charges. In both decisions, the Court assumed that civil *res judicata* principles governed the application of the doctrine of civil *res judicata* to a criminal case. Therefore, the court necessarily determined that the pretrial dismissals which were the predicate for the application of *res judicata* constituted "on the merits dismissals." To suggest otherwise is to suggest that the Justices did not perceive that a necessary element for the application of *res judicata* was a dismissal "on the merits," an obviously insupportable inference.

at all ("First Argument"); or it is an argument for selectively subordinating one public policy, the finality of judgments as embodied in the doctrine of *res judicata* in favor of a paramount public policy, the enforcement of criminal laws ("Second Argument").

The First Argument, of course, is subsumed in the question whether *res judicata* principles apply to bar criminal prosecutions based upon prior pre-jeopardy legal determinations. As indicated above, I have concluded, on the basis of *Adkins* and *Oppenheimer*, that the Virginia appellate courts would likely recognize the doctrine of criminal *res judicata* in cases such as these. This important question, of course, may be addressed by the Virginia appellate courts in this or similar cases.

The Second Argument is much more problematic. First, the Commonwealth has presented no authority in support of it apart from *Slayton v. Commonwealth, supra.* The rule advocated by some commentators is that the exceptions to the application of *res judicata* should "be recognized, if at all, only sparingly and under the most urgent circumstances." Annotation, *Res Judicata As Subject to Exception When Its Application Would Be Opposed to Public Policy,* 88 L. Ed. 389, 394 (1943). *Slayton* is simply such an "urgent" exception. If the doctrine of criminal *res judicata* were applied to insulate an acquitted defendant from perjury charges instrumental in his acquittal, it would present an obvious incentive to criminal defendants to give false testimony thereby undermining our criminal justice system. 185 Va. at 383. *Slayton,* however, does not support the broader unscaled weighing of public policy advocated by the Commonwealth.

The Second Argument also conflicts with the public policy that all criminal laws are to be enforced. Moreover, the Commonwealth presents neither controlling nor persuasive authority how courts are to determine when the importance of prosecuting one crime exceeds the importance of applying the doctrine of *res judicata* thereby promoting public policy in favor of judicial finality. While equity may afford its chancellors broad discretion, the criminal law does not afford its magistrates the broad discretion advocated when matters of personal liberty are involved.

For the foregoing reasons, I conclude that the Commonwealth's case against the defendants must be dismissed on both grounds advanced by the defendants in their motion to dismiss, *autrefois acquit* and criminal *res judicata.* I therefore have entered appropriate orders of dismissal *in camera.*