# Richmond

## MAJOR HENRY JOHNSON, JR.

### V.

## COMMONWEALTH OF VIRGINIA

January 16, 1981.

Record No. 800372.

Present: All the Justices.

*Clifford R. Weckstein* (*Lichtenstein, Weckstein & Raney,* on briefs), for appellant.

*Jerry P. Slonaker, Assistant Attorney General (Marshall Coleman, Attorney General, on brief), for appellee.*

HARRISON, J., delivered the opinion of the Court.

This case is the sequel to *Johnson* v. *Commonwealth,* 220 Va. 146, 255 S.E.2d 525 (1979). A judgment was entered by the court below in accordance with a jury's verdict, finding Major Henry Johnson, Jr., guilty of capital murder in violation of Code § 18.2-31(d), and sentencing him to life imprisonment. The appeal is limited to a consideration of defendant's claim that his prosecution for capital murder in the commission of armed robbery was barred by the doctrines of collateral estoppel, double jeopardy, and autrefois acquit for the reason that a jury in the Circuit Court of Roanoke had previously acquitted him of robbery growing out of the same incident.

Johnson was originally tried in Roanoke under a three-count indictment charging him (1) with the robbery of John N. Gardner of United States currency, (2) with the felonious killing and murdering of John N. Gardner while committing robbery while armed with a deadly weapon, and (3) with using a pistol while committing murder. At the conclusion of the evidence, the trial court, without objection and at the request of the defendant, granted an instruction which stated that "if, under Count II [capital murder] of the indictment, you find the defendant guilty of capital murder, then you must find him not guilty under Count I [robbery] of the indictment." The court, without objection, also granted an instruction which in pertinent part told the jury that "if you find the defendant guilty of capital murder, then you must find the defendant not guilty of robbery, inasmuch as the elements of robbery are integral parts of the elements of the offense of capital murder in this case." The jury was told that capital murder is the "wilful, deliberate and premeditated killing of any person while in the commission of robbery while armed with a deadly weapon" and further that the jury must find beyond a reasonable doubt that "at the time of any such killing the defendant was committing robbery while armed with a deadly weapon" in order to convict for capital murder.

The record of defendant's first trial discloses that the jury initially returned a verdict finding Johnson guilty of capital murder under Count II of the indictment. The court thereupon instructed the jury to return to the jury room for a further consideration of Counts I and III. Thereafter the jury returned its verdicts finding the defendant guilty of capital murder, guilty of using a pistol in the commission of murder, and not guilty of robbery. The trial being bifurcated, the

jury then considered the issue of punishment and returned its unanimous verdict fixing defendant's punishment at death. The verdict was subsequently approved and affirmed by the trial court. The order of the trial court recites that "[i]n view of the fact that robbery is an integral part of Capital Murder, it is Ordered that Robbery, Count 1 ... be dismissed." The defendant voiced no objection to the form of the orders entered by the court.

The defendant appealed his capital murder conviction, seeking a new trial. At that time he raised no issues of double jeopardy, collateral estoppel, autrefois acquit, or inconsistent verdicts. The defendant's conviction for capital murder was reversed and the case remanded for retrial because of error in the form of the instructions as compounded by improper argument of the prosecutors. The jury was not instructed that to convict the defendant of capital murder, it must have found that he was "the triggerman." Following a remand of the case, and on motion of the defendant, a change of venue was granted to the Circuit Court of the City of Alexandria.

Prior to his second trial, the defendant sought to have the trial court dismiss or reform the capital murder indictment, alleging grounds of double jeopardy, collateral estoppel, and autrefois acquit. Specifically, defendant contended there, and argues on this appeal, that since he was "acquitted" of robbery at the first trial he could not be tried for capital murder because the elements of an armed robbery are integral to a conviction of murder in the commission of armed robbery. The trial court overruled defendant's motion, and upon a retrial the jury convicted the defendant of capital murder. Because the jury was unable to agree on the imposition of the death penalty, the defendant was sentenced by the trial court to life imprisonment. Code § 19.2-264.4(E). ·

The facts of the case are set forth in our opinion in *Johnson* v. *Commonwealth, supra*. It suffices to say that on December 9, 1977, John Gardner of Roanoke was shot and killed. At the same time money and property were taken from Gardner's person and office. The defendant and his brother David A. Johnson were the perpetrators of this crime. The verdicts finding defendant guilty of capital murder are amply supported by the evidence. There were no eyewitnesses to the murder and robbery other than the two Johnson brothers. The prosecution of the case was not without difficulty and to meet the exigencies of proof the Commonwealth's Attorney framed one three-count indictment charging the defendant with capital murder, robbery, and the use of a pistol while committing murder.

Virginia Code § 18.2-31 provides, in pertinent part, as follows:

The following offenses shall constitute capital murder, punishable as a Class 1 felony:

\* \* \*

(d) The willful, deliberate and premeditated killing of any person in the commission of robbery while armed with a deadly weapon; ...

Therefore, to convict of capital murder under subdivision (d) of Code § 18.1-31, the Commonwealth must establish all the elements necessary to convict of first degree murder, *i.e.,* that the killing was willful, deliberate and premeditated and, in addition, all the elements necessary to convict of an armed robbery.

The origin, history, and purpose of the double jeopardy clause of the Fifth Amendment are hardly a matter of dispute. In the recent case of *Turner* v. *Commonwealth,* 221 Va. 513, 273 S.E.2d 36 (1980), we enumerated the three separate guarantees assured by the constitutional prohibition of double jeopardy to be the protection against a second prosecution for the same offense after acquittal or after conviction and the protection against multiple punishments for the same offense. We referred to *Blockburger* v. *United States,* 284 U.S. 299, 304 (1932), where it was said that "the test to be applied to determine whether there are two offenses or only one, is whether each [statutory] provision requires proof of a fact which the other does not." *See also Harrison* v. *Commonwealth,* 220 Va. 188, 257 S.E.2d 777 (1979); *Roderick Cecil Jones* v. *Commonwealth,* 218 Va. 757, 240 S.E.2d 658, *cert. denied,* 435 U.S. 909 (1978).

We are conscious of our holding in *Jones, supra,* that the double jeopardy clauses of the federal Constitution and of the Virginia Constitution "forbid not only subsequent punishment but subsequent prosecution. [Citation omitted.] Those clauses apply not only when the two offenses are identical, but also when the former offense is lesser-included in the subsequent offense. [Citations omitted.] The guarantees also apply when the subsequent offense is lesser-included in the former offense." [Citations omitted.] 218 Va. at 759, 240 S.E.2d at 660.

The defendant argues that at his first trial he could not, due to double jeopardy protections, have been convicted of both capital murder and robbery. The answer to this argument is that had defendant been found guilty of both capital murder and robbery in the first trial, the issue of "same offense" would not arise because the convictions arose from a single criminal trial. However, if defendant,

after being convicted of both crimes, had been subjected to punishment for both, an issue of double jeopardy with regard to multiple punishments would arise. *Turner,* 221 Va. at 529, 273 S.E.2d at 47.

Defendant also claims that robbery is a lesser-included offense of capital murder and that since every element necessary to establish the corpus delicti of robbery is relevant and essential to the proof of capital murder, the reciprocal nature of the double jeopardy clause prohibits his conviction of capital murder based on robbery when the defendant had previously been acquitted of that robbery.

Significantly, counsel for defendant concedes that the jury may in fact have acquitted, not on merit but because it was so instructed by the court. The defendant nevertheless contends that on the robbery count he has been discharged "without day" and that his subsequent prosecution for any offense which includes the elements of robbery is barred.

There is not the slightest confusion or doubt about what occurred at Johnson's first trial before the Circuit Court of Roanoke. He was indicted on a single indictment which contained three counts, a matter within the discretion of the prosecution. The Commonwealth's Attorney had no way of knowing in advance how the testimony would evolve and whether one or both of the Johnson brothers would be proven to be the robber and the murderer. The defendant was never in any jeopardy of being convicted by the Roanoke jury of both capital murder and robbery and punished for both offenses. This fact was recognized by the defendant, the Commonwealth's Attorney, and the trial court. The jury was specifically instructed that it could not find the defendant guilty of both capital murder and robbery. The jury was also instructed that for it to convict Johnson of capital murder, it had to find that his killing of the victim was not only willful, deliberate, and premeditated but occurred during the course of defendant's armed robbery of the victim.

While the trial court properly may have followed some other course of action in the first trial, we find no prejudice to the defendant in the course it did follow. This court would stultify itself to hold that the jury in this case made a factual finding that Johnson was innocent of robbery. We would have to find that it ignored the court's instruction and that its finding of not guilty under Count I was completely unrelated to the express direction it had received from the court to return such a verdict if it found defendant guilty of capital murder.

The dispositive issue is whether for double jeopardy purposes there has ever been a factual acquittal of the defendant on the robbery charge. The defendant asked for the instruction which prompted

the jury's verdict on the robbery count. He therefore, aided by the Commonwealth's Attorney and the trial judge, successfully obtained a termination of his prosecution on the robbery count without any determination of his factual guilt or innocence under this count. On the contrary, the jury was directed to return the verdict it did because it, in fact, had found that defendant was guilty of committing an armed robbery (during which he also committed murder). Or, stating this anomalous situation differently, the "not guilty" verdict solicited by the defendant and the prosecution, and directed by the court, was predicated upon an affirmative factual finding by the jury that the defendant was guilty of robbery. Surely the double jeopardy clause, designed to protect against government oppression, does not apply under such circumstances. The Supreme Court recently noted, in *United States* v. *DiFrancesco,* 449 U.S. 117, 218 (1980), that the double jeopardy provision is designed to serve "as a bar against repeated attempts to convict, with consequent subjection of the defendant to embarrassment, expense, anxiety, and insecurity, and the possibility that he may be found guilty even though innocent." None of these considerations are applicable in the instant case.

The defense relies strongly upon *Adkins* v. *Commonwealth,* 175 Va. 590, 9 S.E.2d 349 (1940), and *Simon* v. *Commonwealth,* 220 Va. 412, 258 S.E.2d 567 (1979). Adkins was charged in one count of an indictment with bigamy and in the other count with aiding and abetting in the commission of bigamy. Upon arraignment he demurred to both counts on the ground that being an unmarried man he could not be guilty. The court sustained the demurrer as to each count and ordered that the defendant be discharged from the indictment and go thereof "without day." Adkins was again indicted and charged with the aiding and abetting of bigamy. This court held that the trial judge should have sustained the defendant's plea of autrefois acquit, noting that the court had previously sustained a demurrer to the first indictment "to each count thereof" on the ground relied upon by the accused. Adkins had therefore been fully discharged on both counts by a ruling which as a matter of law barred further proceedings.

In *Simon* v. *Commonwealth, supra,* a defendant was acquitted in the district court on a charge of driving a motor vehicle while under the influence of intoxicants. Subsequently the defendant was indicted for involuntary manslaughter, and during his trial the Commonwealth presented evidence on the issue of defendant's intoxication, an issue which had been previously decided in his favor in the prior proceeding in the district court. Consistent with *Ashe* v. *Swenson,* 397 U.S. 436, 442-43 (1970), we said that "the Commonwealth is barred from

introducing evidence to prove an offense for which a defendant has been previously acquitted, even though the facts necessarily resolved in the acquittal are not dispositive of an element of the offense charged in the second trial." 220 Va. at 417, 258 S.E.2d at 571. We took occasion to note that *Ashe* "seems to focus upon the relitigation of issues of ultimate fact," and that "[c]ourts are in general agreement that in order *to bar a subsequent prosecution* for a different offense arising out of the same transaction a necessary element of the offense in the second trial must have been clearly adjudicated in the earlier proceeding." 220 Va. at 415, 417, 258 S.E.2d at 570, 571. We held that collateral estoppel bars a state's relitigation of facts which had been decided in the defendant's favor in the prior trial even though the second prosecution is not barred. However, we added that "[t]o understand the limits of our holding it is necessary to scrutinize the exact meaning of the district court's determination that defendant was not guilty of driving under the influence of intoxicants." 220 Va. at 419, 258 S.E.2d at 572.

The court in *Adkins* decided that the defendant, being unmarried, could be guilty of neither bigamy nor aiding and abetting in the commission of bigamy. Therefore his discharge constituted a true acquittal upon a defense which barred his reprosecution. In *Simon* there had been an acquittal of the defendant because of the prosecutions' inability to establish intoxication. There had been an actual adjudication in favor of Simon of a factual nature and of an element pertinent to the offense involved in his second trial.

Dismissals of indictments are granted for a number of reasons and ofter serve as tools for the exercise by a trial court of its discretion. *United States* v. *Scott*, 437 U.S. 82 (1978),* recognizes that double jeopardy following dismissal depends on subtle distinctions in the reasons underlying a judgment. It appears that the Court in *Scott* approved a new definition of the acquittal required to invoke a double jeopardy defense. The Court held that a defendant is acquitted for double jeopardy purposes where the ruling of the trial judge represents a resolution in the defendant's favor, correct or not, of some or all of the factual elements of the offenses charged. This permits a

---

* In *United States* v. *Scott,* the trial court, at the conclusion of evidence and on defendant's prior motion, dismissed two counts of a three-count indictment charging distribution of various narcotics because of prejudice from preindictment delay, and the jury thereafter returned a verdict of not guilty as to count three. The Supreme Court, speaking through Mr. Justice Rehnquist, held that the Government was not precluded from appealing an order dismissing the first two counts on the ground that an appeal would offend the double jeopardy clause of the Constitution.

court to distinguish between a dismissal granted pursuant to a legal defense and a dismissal granted pursuant to a factual defense. The latter would qualify as an acquittal for double jeopardy purposes. A legal dismissal might not because its effect could result in a termination of the proceedings against the defendant on a basis unrelated to factual guilt or innocence. This rationale applies in the instant case. Here, the directed "not guilty" verdict depended legally upon a finding of factual guilt rather than factual innocence. The legal principle was activated when the jury found beyond a reasonable doubt that all the elements necessary to convict of first degree murder *and* of robbery had been established and therefore the commission of capital murder was proved. It was this finding by the jury that triggered its "not guilty" verdict which formed the basis of defendant's plea and of this appeal.

It is our conclusion that defendant has not been dismissed "without day," that there has been no prior factual determination in favor of defendant with regard to robbery, and that defendant was not previously "acquitted" of robbery.

Accordingly, the judgment of the court below is affirmed.

*Affirmed.*