UNITED STATES of America,
Plaintiff, Appellant,

v.

John Theodore DOWNING,
Defendant, Appellee.

No. 81–1297.

United States Court of Appeals,
First Circuit.

Argued Oct. 5, 1981.

Decided Dec. 4, 1981.

Margaret D. McGaughey, Asst. U. S. Atty., Portland, Me., with whom Thomas E. Delahanty, II, U. S. Atty., Portland, Me., was on brief, for plaintiff, appellant.

Theodore K. Hoch, Bath, Me., with whom Day & Hoch, Bath, Me., was on brief, for defendant, appellee.

Before COFFIN, Chief Judge, BREYER, Circuit Judge, BONSAL,* Senior District Judge.

COFFIN, Chief Judge.

Appellee was arrested on June 3, 1980, and was subsequently charged with conspiracy to violate the federal narcotics laws, 21 U.S.C. §§ 846, 963. Before trial, appellee made a motion arguing, *inter alia*, that a statement he made to a law enforcement officer was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that this statement, along with evidence found as a result of it, should be suppressed. The district court granted this motion, and the government appeals from the court's order pursuant to 18 U.S.C. § 3731.

The underlying facts are not disputed. After a lengthy investigation, federal and state drug enforcement agents concluded that a parcel of property in Tenant's Harbor, Maine, was being used in connection with violations of federal drug laws. The agents found appellee in the main house on the property; he was placed under arrest, and a state police officer advised him of his *Miranda* rights. After initially waiving his rights and responding to police questioning, appellee stated that he wished to see a lawyer before talking further.

Appellee was soon moved to another building on the premises for booking procedures. A federal customs officer advised him that he was not required to answer any questions; but the officer failed to recite the full *Miranda* warnings or to ascertain whether appellee had previously requested the presence of an attorney before additional interrogation. After taking down appellee's personal history, the officer requested that he empty his pockets and surrender various articles, including some keys. The officer asked what the keys were for, and appellee responded that they belonged to his Cessna airplane. When asked where the plane was located, appellee stated that it was parked at the Owl's Head Airport in Rockland, Maine. This was the first time any of the drug enforcement agents learned of the plane's existence. The police then requested consent to search the plane, which appellee ultimately refused, indicating that he preferred to consult an attorney first. Later, while being transported to Portland to appear before a magistrate, appellee apparently expressed concern about the welfare of his plane.

Law enforcement officers subsequently obtained a warrant and searched the plane. Charts and other documents were found in the cockpit. The officers also questioned airport employees, who made statements implicating appellee in the drug conspiracy.

The district court found that appellee's statement about the existence and location of his airplane was inadmissible against him because he had previously requested a lawyer and his statement was made in response to a question asked when no lawyer was present. The court further held that the evidence obtained as a result of this violation must be suppressed. On appeal, the government argues in the alternative that no *Miranda* violation occurred, that the exclusionary rule should not be applied to the fruits of such a violation, and that the tangible and testimonial evidence suppressed below would have been discovered independent of any *Miranda* violation. We affirm the district court's holding on the first two issues, and remand solely to allow the court to consider the government's argument that the suppressed evidence would independently have been obtained.

### I.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Su-

* Of the Southern District of New York, sitting by designation.

preme Court held that the Fifth Amendment requires the exclusion of any statement made by an accused during custodial interrogation, unless he has been advised of his right to remain silent and to have an attorney present during questioning and has voluntarily waived those rights. The Court has recently stated in clear terms that "an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation." *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981). Moreover, once an accused requests the presence of counsel, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversation with police." *Id.* at 484–85, 101 S.Ct. at 1885.

■ The government concedes that appellee was questioned about his keys in the absence of an attorney, after he had explicitly requested the presence of counsel, and that appellee did not initiate this conversation. It is also uncontested that appellee was in "custody" for purposes of the Fifth Amendment, because he had been arrested when the questioning occurred. The government's argument is instead that the police questioning arose during the course of "routine booking" and thus did not constitute "interrogation" within the meaning of *Miranda*.

The Court in *Miranda* defined interrogation as "questioning initiated by law enforcement officers". 384 U.S. at 444, 86 S.Ct. at 1612. The term "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980).

We think it clear that when appellee was asked what his keys belonged to and where his plane was located, this constituted "express questioning" and therefore satisfied the Court's definition of "interrogation".

The government's reliance on cases holding that questions relating to an accused's identity do not implicate the Fifth Amendment is misplaced. While courts have held that *Miranda* does not apply to "biographical data necessary to complete booking", *United States v. Menichino*, 497 F.2d 935, 941 (5th Cir. 1974); see *United States ex rel. Hines v. LaVallee*, 521 F.2d 1109, 1113 (2d Cir. 1975), *cert. denied*, 423 U.S. 1090, 96 S.Ct. 884, 47 L.Ed.2d 101 (1976) (questions pertaining to marital status), because information about a suspect's identity is not "testimonial" in character, *United States v. Prewitt*, 553 F.2d 1082, 1085–86 (7th Cir.), *cert. denied*, 434 U.S. 840, 98 S.Ct. 135, 54 L.Ed.2d 104 (1977), we do not construe this limited exception to encompass all questions asked during the booking process. *See Proctor v. United States*, 404 F.2d 819 (D.C. Cir.1968) (police question "are you employed" in order to fill out line-up sheet constitutes interrogation).

■ *Miranda* and its progeny are based on the premise that custodial questioning is inherently coercive. Once an accused indicates that he wishes to remain silent or desires the presence of an attorney, "any statement taken [by police officials] cannot be other than the product of compulsion, subtle or otherwise." *Miranda, supra*, 384 U.S. at 474, 86 S.Ct. at 1628. The resumption of questioning in the absence of an attorney after an accused has invoked his right to have counsel present during police interrogation strongly suggests to an accused that he has no choice but to answer. "[T]he accused having expressed his own view that he is not competent to deal with the authorities without legal advise, a later decision at the authorities' insistence to make a statement without counsel's presence may properly be viewed with skepticism." *Michigan v. Mosley*, 423 U.S. 96, 110 n.2, 96 S.Ct. 321, 329, 46 L.Ed.2d 313 (1975) (White, J., concurring).

Given the unavoidable coerciveness of police questioning after an accused has requested the presence of counsel, we decline the government's invitation to create a broad exception to the Fifth Amendment

for police questions asked without "investigative intent" or pursuant to "required administrative procedures".[1] The exception in *Innis* for police actions or statements "normally attendant to arrest and custody" does not apply to the "express questioning" which occurred here, but only to its "functional equivalent". 446 U.S. at 300–01, 100 S.Ct. at 1689–90. In any case, we think the questions about appellee's keys and airplane were "reasonably likely to elicit an incriminating response." *Id.* at 301, 100 S.Ct. at 1689. We therefore hold that appellee's statements about the existence and location of his airplane were properly excluded.

## II.

█ The government next argues that even if appellee's responses to police interrogation are inadmissible, the Fifth Amendment exclusionary rule does not require that the third party testimonial and tangible evidence discovered as a result of his statements be suppressed. The government relies heavily on *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). In *Tucker*, the Court held that the failure of police to advise a suspect of his right to have counsel appointed if he was unable to afford retained counsel did not require the exclusion of evidence obtained as a result of the accused's response to police questioning, when the interrogation occurred prior to the Court's decision in *Miranda*. *Tucker* is clearly not controlling; the Court explicitly declined to determine the scope of the Fifth Amendment exclusionary rule when, as here, the interrogation occurred *after* the *Miranda* decision. *Id.* at 447, 94 S.Ct. at 2365.

Moreover, *Tucker* is distinguishable on a number of grounds which lead us to hold that the fruits of appellee's statements must be suppressed. *Tucker's* holding was based squarely on the fact that the police interrogation occurred *prior* to the Court's clarification in *Miranda* of the Fifth Amendment safeguards necessary to protect an accused's right not to incriminate himself. Since the police had complied with the principles established in *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), *see Tucker, supra*, 417 U.S. at 447, 94 S.Ct. at 2365, the Court was unable to conclude that they had "engaged in willful, or at the very least negligent, conduct" by failing to advise the accused of his right to appointed counsel. *Id.* The Court reasoned that the deterrent purpose of the exclusionary rule would not be advanced by excluding the fruits of the defendant's statement, because the police had fully complied with constitutional principles announced by the court at the time of interrogation. *Id.* at 446–48, 94 S.Ct. at 2364–66.

In this case, however, the state law enforcement officer had no similar excuse for failing to advise the federal officer that appellee had elected to exercise his constitutional right. To allow officers to do sequentially what would, if done at or near the same time and place, be impermissible conduct would encourage circumvention of the safeguard. Law enforcement officers working in teams should be discouraged from violating the accused's constitutional rights by failing to ascertain or advise one another whether those rights had been previously asserted. The official conduct was at least "negligent" and we conclude that the purposes of the exclusionary rule would

1. The government argues that questions about appellee's keys were designed solely to allow the police to inventory his personal effects, in order to protect the government from liability in case of damage or theft and to enable the government to ensure the security of the object to which the keys belonged. The argument has an element of circularity; it is difficult to foresee the government being liable if they do not even know of the plane's existence. Moreover, if an accused is concerned about the safety of his possessions while he is in custody, the Fifth Amendment certainly does not preclude him from asking the police to safeguard them. We are therefore unable to agree with the holding in *United States v. LaMonica*, 472 F.2d 580, 581 (9th Cir. 1972), that the Fifth Amendment was not offended after the accused requested counsel simply because the police officer "was not seeking evidence but was trying to identify and inventory [the suspect's] personal effects." The case was, of course, decided before the Supreme Court's clarification of "interrogation" in *Innis*.

be furthered by suppressing the fruits here.[2]

*Tucker* was also rooted in the distinction between a violation of the Fifth Amendment and a violation of "the prophylactic rules developed to protect that right". *Id.* at 439, 94 S.Ct. at 2361. The Court held that in leaving out one of the *Miranda* warnings, the police conduct was not unconstitutional but was only a disregard of the procedural rules later established in *Miranda*.[3] *Id.* at 444–46, 94 S.Ct. at 2363–65. In reaching this conclusion, the Court relied on the fact that the accused had been asked whether he wanted an attorney and had replied that he did not, and had also been informed of his right to remain silent. *Id.* at 444–45, 94 S.Ct. at 2363–64. The Court reasoned that since the Constitution did not require police to use the precise words and warnings set forth in *Miranda*, the failure of police to provide one of the warnings did not make out a *per se* Fifth Amendment violation. *Id.* at 444, 94 S.Ct. at 2364, *quoting Miranda, supra,* 384 U.S. at 467, 86 S.Ct. at 1624.

In the case before us, by contrast, appellee explicitly requested the presence of counsel and this request was disregarded. The Court has made clear that "[t]he Fifth Amendment *right* identified in *Miranda* is the right to have counsel present at any custodial interrogation". *Edwards v. Arizona, supra,* 49 U.S.L.W. at 4498 (emphasis added). While *Miranda* may have provided flexibility to police in administering the safeguards, it provided no similar leeway for police to ignore a suspect's right to have counsel present once that right has been asserted. *Miranda, supra,* 384 U.S. at 467–74, 86 S.Ct. at 1624–28. Appellee asserted his Fifth Amendment right and the federal official violated that right by continuing interrogation.[4] The precise issue before us here is thus the distinct one of the scope of the exclusionary rule when evidence is obtained as a result of a Fifth Amendment violation.

*Tucker* itself suggested that when a suspect's Fifth Amendment right is abridged, the fruits of that violation must also be suppressed under the doctrine of *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). *Tucker, supra,* 417 U.S. at 445–46, 94 S.Ct. at 2364–65. In *Wong Sun* the police discovered evidence through statements made by the accused after he had been arrested in violation of the Fourth Amendment's probable cause requirement. The Court held that the derivative evidence could not be used against the accused at trial. The Court's rationale applies equally well to the Fifth Amendment context: "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court but that it shall not be used at all". *Wong Sun, supra,* 371 U.S. at 475, 83 S.Ct. at 411, *quoting Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920).

The Court has recently stated that "the exclusionary sanction applies to any 'fruits' of a constitutional violation". *United*

---

2. The government argues that the exclusionary rule should not be applied to the fruits of appellee's admissions because the law enforcement officers acted reasonably and in good faith. Given our conclusion that the police conduct was not objectively reasonable, we need not consider the desirability of accepting such a doctrine, as the Fifth Circuit has recently done. *See United States v. Williams,* 622 F.2d 830, 840–41 & n.4 (5th Cir. 1980) (*en banc*), *cert. denied,* 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114.

3. The Court's distinction and its reliance on traditional standards of voluntariness to determine the constitutionality of the police conduct led some commentators to conclude that *Tuck-*

er had dismantled the constitutional underpinnings of the *Miranda* decision. *See* Stone, *The Miranda Doctrine in the Burger Court,* 1977 Sup.Ct.Rev. 99, 118, 123; *The Supreme Court, 1973 Term,* 88 Harv.L.Rev. 197 (1974). As we note in text, however, the Court has recently clarified that the right to have counsel present during custodial interrogation derives from the Fifth Amendment, and is not merely a procedural safeguard mandated by *Miranda. See Edwards v. Arizona, supra.*

4. Appellee has not argued that his Sixth Amendment right to counsel was violated; we therefore do not consider the issue.

*States v. Crews,* 445 U.S. 463, 470, 100 S.Ct. 1244, 1249, 63 L.Ed.2d 537 (1980). The Court has held that a confession induced by the introduction into evidence of prior confessions obtained in violation of the Fifth Amendment must be suppressed under the exclusionary rule. *Harrison v. United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). While the Court has not explicitly decided whether indirect tangible or third party testimonial evidence discovered as a result of a Fifth Amendment violation must be excluded under this doctrine, the lower courts that have considered this issue have held that the evidence must be suppressed. *See United States ex rel. Hudson v. Cannon,* 529 F.2d 890, 892–93 (7th Cir. 1976); *Parker v. Estelle,* 498 F.2d 625, 629 (5th Cir. 1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975); *see. also United States v. Massey,* 437 F.Supp. 843, 855–61 (M.D. Fla.1977).[5]

The Court has recently expressed the view that the primary justification for the exclusionary rule is to deter unconstitutional police conduct. *See, e. g., United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). The deterrence rationale requires that in addition to suppressing evidence obtained by unconstitutional means, the fruits of such evidence must also be excluded. *See, e. g., Wong Sun, supra,* 371 U.S. at 484–86, 83 S.Ct. at 415–17. Here, for example, the police questioning about appellee's key and airplane would not reasonably be expected to lead to an admission of guilt; rather, the questions were likely to and did lead to evidence incriminating appellee indirectly. Thus, in order to deter the impermissible police conduct here we must exclude the evidentiary fruits of appellee's statements as well as the statements themselves. We therefore hold that any evidence obtained as a result of violating appellee's Fifth Amendment right to have counsel present during interrogation cannot be introduced against him at trial.[6]

### III.

The government contends finally that the tangible and testimonial evidence suppressed below would have been discovered independent of appellee's statements in response to police interrogation. *See, e. g., United States v. Bienvenue,* 632 F.2d 910, 913–14 (1st Cir. 1980). *Cf. United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978) (discussing factors in attenuation analysis as applied to live witness testimony). Because the independent discovery issue was raised but not focused upon below and the district court did not address it, we remand this case to allow the court to determine the issue. *See United States v. Moore,* 562 F.2d 106, 113–14 (1st Cir. 1977), *cert. denied sub nom. Bobisink v. United States,* 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978).

---

**5.** The *Hudson* Court extended *Tucker's* distinction between constitutional rights and *Miranda* safeguards to hold that the fruits of a *Miranda* violation need not be excluded. *See also Massey, supra,* 437 F.Supp. at 860–61. *But see Commonwealth v. White,* 374 Mass. 132, 371 N.E.2d 777 (1977), *aff'd by an equally divided court,* 439 U.S. 280, 99 S.Ct. 712, 58 L.Ed.2d 519 (1978). The possibility of obtaining admissible derivative evidence would seem to remove much of the incentive for police to follow the dictates of *Miranda. See* Dershowitz & Ely, *Harris v. New York: Some Anxious Observations on the Candor and Logic of the Emerging Nixon Majority,* 80 Yale L.J. 1198, 1218–21 (1971). In light of our holding that appellee's *constitutional* rights were abridged, however, we need not decide this issue.

**6.** We are aware that in recent years the Supreme Court has displayed an unwillingness to extend the exclusionary rule beyond its traditional context. *See, e. g., United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (rule does not apply to civil tax proceedings); *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (rule does not apply to grand jury proceedings); *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (rule does not prohibit use of evidence to impeach defendant's credibility). In our view, however, applying the exclusionary rule to prohibit use of the direct fruits of a violation of a defendant's constitutional right against him at his criminal trial does not constitute an extension of the rule beyond its historical confines. *See Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

*The order of the district court is affirmed in part and remanded in part.*