**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**George A. SCALF, Jr.,**
**Defendant-Appellant.**

**No. 81–1634.**

United States Court of Appeals,
Tenth Circuit.

May 27, 1983.

Thomas S. Bala, Oklahoma City, Okl. (Robert L. Wheeler, Oklahoma City, Okl., on brief), for defendant-appellant.

John E. Green, Acting U.S. Atty., Oklahoma City, Okl., for plaintiff-appellee.

Before SETH, Chief Judge, HOLLOWAY, Circuit Judge, and ARRAJ, District Judge.*

PER CURIAM.

George A. Scalf, Jr. was convicted of aiding and abetting the armed robbery of a federally insured savings and loan association and of putting a life in jeopardy in so doing, in violation of 18 U.S.C. sections 2 and 2113(a) and (d).[1] He was sentenced to fifteen years' imprisonment.

---

* Honorable Alfred A. Arraj, United States District Judge for the District of Colorado, sitting by designation.

1. The relevant statutes provide as follows:

§ 2. *Principals*

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

On appeal Scalf contends that (1) statements he made to F.B.I. agents after his arrest and his request for counsel should have been suppressed from evidence; (2) the gun used in the robbery was a fruit of unlawful interrogation and also should have been suppressed; (3) the trial court erred by failing to instruct that an aider and abettor of armed bank robbery must have known the principal was armed and by failing to instruct the jury on the lesser included offense of bank larceny; and (4) the trial court erred in denying his motion for a severance or a new trial.

### Background

On February 25, 1981, appellant and his codefendant, Paul M. Skaggs, entered the May Avenue branch office of Local Federal Savings and Loan Association in Oklahoma City, Oklahoma. Skaggs approached a teller, pulled out a gun, and told her to give him all of the money in her drawer. While she stood there hesitating, Skaggs reached over the counter and grabbed the money, which included "bait money" (bills whose serial numbers are recorded for later identification). During this time appellant walked up to an adjacent teller's station and asked for coin wrappers in an effort to divert her attention away from the robbery. After Skaggs had obtained the money, Scalf followed him out the door. They left the area in a car that had been parked nearby.

The robbery was promptly reported to the authorities. A short time later, appellant Scalf, codefendant Skaggs, and two teenage girls were seen driving west on Highway # 3 in the getaway car. Oklahoma Highway Patrol Lieutenant Kirk and Trooper Bradley, in separate vehicles, had received a report of the robbery and a description of the getaway car. After spotting the car, Lieutenant Kirk read its license plate number and by radio requested a report on it. He was advised that the license plate was stolen and that there should be four occupants in the car who were wanted on a felony warrant and considered armed and dangerous.

Bradley and Kirk stopped the car, placed Scalf and Skaggs under arrest, and read them their *Miranda* rights. In searching for weapons, the officers found a roll of bills later identified as money taken in the robbery, but found no gun. At this time both appellant and Skaggs requested counsel. Other law enforcement officers then arrived, and members of the Oklahoma Police Department escorted the defendants to the Oklahoma County Jail. No interrogation was conducted up to this time.

After being booked, the defendants were taken to an interview room, where they were met by F.B.I. Special Agents Choney and Young. The details of that meeting, particularly the sequence of events, are disputed. Additionally, the record is entirely ambiguous as to whether the defendants were interviewed separately or together. However, it is clear that Mr. Choney interrogated both of them, and that at some point during the interrogation both defendants signed a waiver of rights and confessed to having committed the robbery. During the interrogation, Choney learned that the gun used in the robbery had been left under the dashboard of the getaway car. Choney signed an affidavit detailing the circumstances of the robbery and the subsequent investigation. Based upon the affi-

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

§ 2113. *Bank robbery and incidental crimes*

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan associa-

tion ... [s]hall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

. . . .

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

davit, a warrant to search the car was issued, and the gun was found. Scalf and Skaggs were tried together on charges of armed bank robbery.

Appellant Scalf moved to suppress from evidence his confession, his written waiver of rights, the stolen money, and the gun. A full hearing was held at which the trial court denied the motion in its entirety. The court found that Scalf's waiver and confession were made voluntarily and that the physical evidence was not obtained by means of an unreasonable search and seizure. On appeal, Scalf challenges this ruling, except as it regards the seizure of the currency, and assigns as error the instructions to the jury and the denial of his motion for severance or a new trial.

### Admissibility of the Confession

Appellant contends that the present case is governed by the rule articulated in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In *Edwards,* the defendant was arrested, taken to the police station and there advised of his *Miranda* rights and questioned. Having been told that another suspect had implicated him in the crime, Edwards denied involvement and gave a statement presenting an alibi defense. He then sought to "make a deal." Later he said "I want an attorney before making a deal." At that point questioning ceased and he was taken to the county jail.

The next morning, two detectives, colleagues of the officer who had interrogated him earlier, came to the jail to see Edwards. Edwards told the guard he did not want to see anyone, and the guard replied that he "had to" talk with the detectives. The detectives identified themselves, stated that they wanted to talk to him, and read him his *Miranda* rights. Edwards asked to hear the tape recorded statement of his alleged accomplice, and it was played for him. He then implicated himself in the crime.

The Supreme Court reversed the Arizona Supreme Court's ruling that Edwards had waived his right to counsel and his right to remain silent. This result was expressly derived from the opinion in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which declared that a suspect has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation, and that if the suspect requests counsel, "the interrogation must cease until an attorney is present." *Id.* at 474, 86 S.Ct. at 1628, 16 L.Ed.2d at 723. The Court also reiterated the rule that a waiver of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment of a known right or privilege, and that this matter depends upon the particular facts and circumstances of a case, including the background, experience, and conduct of the accused. *Edwards, supra,* 451 U.S. at 482, 101 S.Ct. at 1883–84, 68 L.Ed.2d at 385.

The Court went further to declare:

[W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police.

451 U.S. at 484–85, 101 S.Ct. at 1884–85, 68 L.Ed.2d at 386 (footnote omitted). In the present case, it is clear that after Scalf invoked his right to counsel, he was subjected to further interrogation before he was provided with counsel, and that this interrogation was not the result of a communication, conversation, or exchange initiated by him.

█ The government contends first that *Edwards* should not be given retrospective application. (Scalf was convicted on April 14, 1981, and *Edwards* was not decided until May 18, 1981.) This contention is without merit because the *Edwards* opinion does not

announce a new rule of law, but merely clarifies principles announced long ago in *Miranda, supra.* *U.S. ex rel. Kimes v. Greer,* 541 F.Supp. 632, 634–35 (N.D.Ill. 1982); *Connecticut v. Acquin,* 187 Conn. 647, 448 A.2d 163, 174 (1982), *petition for cert. filed,* 51 U.S.L.W. 3461 (Nov. 18, 1982) (No. 82–896); *Michigan v. Paintman,* 412 Mich. 518, 315 N.W.2d 418, 422 (1982), *cert. denied,* 456 U.S. 995, 102 S.Ct. 2280, 73 L.Ed.2d 1292 (1982); *Minnesota v. Brown,* 317 N.W.2d 714, 715 (Minn.1982), *petition for cert. filed,* 51 U.S.L.W. 3009 (July 1, 1982) (No. 82–1); *Oregon v. Taylor,* 56 Or. App. 703, 643 P.2d 379, 382 (1982). *Contra Louisiana v. Shea,* 421 So.2d 200, 208–10 (La.1982). The language of the *Edwards* opinion makes it difficult to conclude otherwise. That *Edwards* is to be given retrospective application is made all the more clear by the Supreme Court's remand, within a week after handing down *Edwards,* of six cases for reconsideration in light of that opinion. *Louisiana v. Shea, supra,* at 212 (Calogero, J., dissenting); *Minnesota v. Brown, supra,* at 715.

The government also contends that *Edwards* is inapplicable because Scalf's request for an attorney was directed to state patrolmen, and not to the F.B.I. agents who later interrogated him. Although it does not affirmatively appear in the trial record, the government asserts in its brief that the agents were unaware of the request for counsel when they questioned Scalf. In contrast, the interrogators who questioned Edwards were in both instances from the same police force. We are not persuaded by this distinction.

A factual situation similar to the present one was considered in *White v. Finkbeiner,* 687 F.2d 885 (7th Cir.1982) (*White III*), *petition for cert. filed sub nom. Fairman v. White,* 51 U.S.L.W. 3001 (July 6, 1982) (No. 81–2340).[2] The defendant White was read his *Miranda* rights by a Captain Johnson at the police station shortly after being arrested. After a brief conversation, White

vaguely indicated to Johnson that he would like to see an attorney. Johnson never made note of this request or notified the other officers of it, because he interpreted it merely as an exercise of the right to remain silent. Investigating officers of the same police force, unaware of the request for counsel, later interrogated White on several occasions, in each instance repeating the *Miranda* warnings. White never requested counsel again or mentioned his earlier request, and in fact stated that he did not need a lawyer.

In its initial consideration of the issue, the Seventh Circuit determined that a valid waiver of White's *Miranda* rights had been established despite the failure to honor his request for counsel and subsequent police-initiated interrogation. *White II, supra* note 2, at 190–94. The Supreme Court vacated the judgment and remanded the case for further consideration in light of the holding in *Edwards, supra.* *White v. Finkbeiner,* 451 U.S. 1013, 101 S.Ct. 3000, 69 L.Ed.2d 385 (1981).

On remand, the Seventh Circuit concluded that under *Edwards,* the fact that the investigating officers were unaware of White's earlier request for counsel was irrelevant, and the confession should have been suppressed. *White III, supra,* at 887–88 & n. 9. Other courts have reached the same conclusion. *Karr v. Wolff,* 556 F.Supp. 760, 765 (N.D.Ill.1983) (dictum); *U.S. v. Lilla,* 534 F.Supp. 1247, 1280 (N.D.N. Y.1982); *Louisiana v. Arceneaux,* 425 So.2d 740, 744 (La.1983); *see also U.S. ex rel. Kimes v. Greer,* 527 F.Supp. 307, 310 (N.D. Ill.1981) (good faith of officer who questioned suspect after request for counsel is irrelevant). We believe this to be a correct statement of the law.

■ To state the rule affirmatively, once a suspect has invoked the right to counsel, knowledge of that request is imputed to all law enforcement officers who subsequently deal with the suspect. *White II, supra* note 2, at 192 n. 20; *U.S. v. Lilla, supra,* at 1280;

---

2. The following facts are taken from the opinion disposing of an earlier appeal in the same case, *White v. Finkbeiner,* 611 F.2d 186 (7th

Cir.1979) (*White II*), *rev'd and remanded,* 451 U.S. 1013, 101 S.Ct. 3000, 69 L.Ed.2d 385 (1981).

*Louisiana v. Arceneaux, supra,* at 744. To rule otherwise would be to create a good faith exception to the exclusionary rule; this we decline to do, absent direction from the Supreme Court.

Furthermore, it makes no difference that the interrogation of Scalf was conducted by officers of a law enforcement agency other than the agency to whom he made his request for counsel. *Karr v. Wolff, supra,* at 764; see also *U.S. v. Downing,* 665 F.2d 404, 407–08 (1st Cir.1981) (where state law enforcement officer had no excuse for failing to advise federal officer that suspect had invoked his right to counsel, such failure was negligent and required suppression of fruits of interrogation); *Johnson v. Virginia,* 454 U.S. 920, 102 S.Ct. 422, 70 L.Ed.2d 231 (1981) (mem.) (Marshall, J., dissenting) (knowledge of petitioner's request for counsel at arraignment hearing imputed to police), *denying cert. to* 221 Va. 736, 273 S.E.2d 784 (1981).

We are aware of only one opinion that might support the government's contention that the F.B.I. interrogation of Scalf after his request for counsel was proper despite the ruling in *Edwards.* In *McFadden v. Virginia,* 300 S.E.2d 924 (Va.1983), the defendant had been questioned during two separate periods of confinement, which were separated by a very brief period of release. McFadden requested counsel, in the presence of the officers who detained him during the first period of confinement, but not after he was released and again brought into custody on an arrest warrant. He moved to suppress the admission of a confession he made during the second period of confinement.

In distinguishing *Edwards,* the Virginia Supreme Court found it significant that the interrogation which elicited McFadden's confession was conducted by officers from a different jurisdiction than that of the arresting officers, and that the interrogating officers were unaware that McFadden had previously requested counsel. However, the court also emphasized other factual differences from *Edwards.* These included the facts that McFadden's request for counsel occurred in a separate period of custody and was made in connection with charges other than that for which he had been arrested. These latter facts are sufficient to distinguish the present situation from that of *McFadden.*

■ Therefore we follow the strong weight of authority in holding that appellant's confession was obtained in violation of his rights under the Fifth Amendment as declared in *Miranda, supra,* and *Edwards, supra,* and should have been excluded from evidence. Because the error cannot be deemed harmless, it requires that appellant be granted a new trial. We will discuss other grounds of alleged error as they may affect proceedings on retrial.

### *Admissibility of the Gun*

Appellant contends that the handgun used in the robbery was discovered by the F.B.I. as a fruit of his unlawfully obtained confession and must therefore be suppressed under the poisonous tree doctrine. *See Wong Sun v. U.S.,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The affidavit in support of the search warrant stated that Scalf, while confessing his involvement in the robbery, told Choney where the gun was located.

Counsel for the parties have assumed that the poisonous tree doctrine applies to physical evidence obtained in consequence of a voluntary confession elicited in violation of the prophylactic rules of *Miranda.* This remains an open question. *Compare Michigan v. Tucker,* 417 U.S. 433, 460–61, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974) (White, J., concurring) (evidence which is a fruit of a violation of prophylactic rules of *Miranda* should not be excluded) *and Wilson v. Zant,* 249 Ga. 373, 290 S.E.2d 442, 447–48 (1982) (fruit of a violation of *Edwards* is admissible if the confession was voluntary), *cert. denied,* —— U.S. ——, 103 S.Ct. 580, 74 L.Ed.2d 940 (1982) *with U.S. v. Downing,* 665 F.2d 404, 407–09 (1st Cir.1981) (fruit of *Edwards*-tainted statement must be suppressed) *and Massachusetts v. White,* 374 Mass. 132, 371 N.E.2d 777, 781 (1977) (fruit of a violation of *Miranda* rules must be

suppressed), *aff'd by an equally divided court,* 439 U.S. 280, 99 S.Ct. 712, 58 L.Ed.2d 519 (1978) (mem.).

■ However, we need not consider this issue because even were we to apply the poisonous tree doctrine, the gun would clearly be admissible. Evidence obtained during the execution of a search warrant need not be suppressed under the poisonous tree doctrine when, disregarding improperly obtained information in the supporting affidavit, the remainder of the affidavit still discloses facts sufficient to establish probable cause for the search. *U.S. v. Hackett,* 638 F.2d 1179 (9th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). Such is the case here.

■ Agent Choney's affidavit states, among other things, that within forty-five minutes after an armed bank robbery, appellant was apprehended while travelling in a car that matched the description of the getaway car. The occupants of the car possessed currency taken from the bank, but no gun was found. These facts alone were sufficient to establish probable cause to believe that the gun used in the robbery could be found in the car. The gun was therefore properly admitted into evidence.

### Propriety of the Jury Instructions

Appellant assigns as error the trial court's refusal to instruct the jury that Scalf could not be guilty of aiding and abetting armed bank robbery unless he knew that his accomplice was armed. In light of our ruling on the admissibility of appellant's confession, it is unnecessary to rule on this issue at the present time.[3]

■ Appellant raises a related argument that is clearly without merit. He contends that the trial court erred in refusing his requested jury instruction on bank larceny, 18 U.S.C. § 2113(b),[4] as a lesser included offense of bank robbery. A lesser included offense instruction should not be given unless there is evidence to support a finding that the lesser offense was committed while the greater was not. *U.S. v. Pino,* 606 F.2d 908, 917 (10th Cir. 1979). Furthermore, because the question whether a lesser included offense instruction is appropriate depends on the evidence, the trial court is in a unique position to determine whether the instruction should be given. Therefore the trial court's determination will not be disturbed on appeal absent an abuse of discretion. *U.S. v. Crouthers,* 669 F.2d 635, 640 (10th Cir.1980).

■ Counsel for appellant argues that Scalf did not use force, violence, or intimidation, as required for conviction under 18 U.S.C. § 2113(a), or assault or endanger the life of another person with a deadly weapon, as required by 18 U.S.C. § 2113(d). There was no evidence, according to counsel, that Scalf knew his accomplice had a gun or planned to use or threaten violence. Of course, it is unnecessary that Scalf himself have used or threatened violence before he can be held responsible. There was ample circumstantial evidence to indicate that Scalf knew Skaggs would use or threaten violence, and no evidence to suggest that he expected Skaggs to obtain the money by some other means. There is no basis for the contention that the trial court abused its discretion in concluding that the evidence supported an instruction on bank robbery but not bank larceny.

### Conclusion

Appellant's motion to suppress his statement should have been granted. The error

---

**3.** On remand, however, the trial court may find it useful to consider the following opinions regarding this issue: *U.S. v. Sanborn,* 563 F.2d 488, 491 (1st Cir.1977); *U.S. v. Short,* 493 F.2d 1170, 1172 (9th Cir.1974); *U.S. v. Longoria,* 569 F.2d 422, 425 (5th Cir.1978) (dictum); *U.S. v. Ferreira,* 625 F.2d 1030, 1031–33 (1st Cir.1980); *U.S. v. Methvin,* 441 F.2d 584, 586 (5th Cir. 1971), *cert. denied,* 404 U.S. 839, 92 S.Ct. 130, 30 L.Ed.2d 72 (1971).

**4.** 18 U.S.C. § 2113(b) provides:

(b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both . . . .

was not harmless. Our determination that appellant's Fifth Amendment rights were violated by the admission of his incriminating statements requires that we remand for a new trial. We therefore need not consider the other grounds of alleged error in the trial court's denial of appellant's motion for severance or a new trial.

Reversed and remanded for a new trial.